THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
VINCENT SMITH, Defendant-Appellant.

First District (3rd Division)   No. 77-530

Opinion filed September 27, 1978.

Ralph Ruebner and Susan McElroy, both of State Appellate Defender's Office, of Chicago, for appellant. ·

Bernard Carey, State's Attorney, of Chicago (Kenneth T. McCurry, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

A jury in the circuit court of Cook County found the defendant, Vincent Smith, guilty of indecent liberties with a child (Ill. Rev. Stat. 1977, ch. 38, par. 11—4) and the included offenses of contributing to the sexual delinquency of a child and attempt of indecent liberties with a child. (Ill. Rev. Stat. 1977, ch. 38, pars. 11—5 and 8—4.) He was sentenced to imprisonment for a term of five to 10 years. The defendant, on appeal, argues that: (1) the trial court erred in admitting certain statements by the complaining witness; (2) he was deprived of a fair trial because of several inflammatory remarks by the prosecutors in their closing arguments; and (3) the court erred in refusing to give jury instructions concerning battery as a lesser included offense of indecent liberties with a child and an instruction relating to prior inconsistent statements.

On August 29, 1975, Carl Davis, nine years old, and Martin Beard, 11 years old, a foster child living with Carl's family, were accosted by a man with a knife. In court, Carl described this assailant as a short, skinny, black man with a beard under his chin. He said the man wore a blue-flowered shirt, brown pants and All Star gym shoes. The knife the man carried, according to Carl, had a handle that was brown with a white stripe. Martin's testimony at trial confirmed Carl's description of the man, although Martin said that the knife was black with a white stripe.

Carl said the man held the knife at his back and ordered Martin and him to walk behind nearby bushes. While in the bushes, the man demanded their money and told both boys to pull down their pants. The boys said that they had no money but complied with the command to lower their pants. The man ordered Carl to lie on the ground and told Martin to sit on a nearby rock. The man pulled down his pants and laid on top of Carl. Carl testified that the man's "whole body" was touching the back of his body and said that the man touched the front of his body and between his legs. Martin testified that he saw the man take his penis and "stick it in the back in [Carl's] behind and then after he did that he peed on him." Carl said he did not see the man "pee" on him but on cross-examination, he said that the man "peed" on him. Carl was unable to estimate how long the man was with them. Martin, however, said that the

three were in the bushes for about 15 minutes. After the attack the man ran away. Both boys identified the defendant in court as the assailant.

After the incident Carl and Martin said they went to a nearby home where they told a lady what had happened and then they walked home. Upon arriving home, after some coaxing, Carl told his sister about the incident. She called the police. Carl repeated in court what he told the police when they arrived at his home that day: that the acts were done by a thin, black man who wore a blue-flowered shirt, brown pants and gym shoes. The defendant did not object to Carl's testimony.

Several days after the attack Carl Davis, while sitting on his front porch, saw the defendant, Vincent Smith, walk by his house. Carl testified that he identified Smith to his mother as the man who attacked him. While Carl's mother called the police, Carl, Martin and Carl's brother followed the defendant to a park where they saw him run into a fieldhouse. When the police arrived at the park, the two boys entered the fieldhouse with an officer and pointed out the defendant as the man who had committed the attack. The defendant was searched at the park in front of the boys and a brown handled knife with a stripe on it was found in the defendant's pocket. Both boys identified the knife at the park and at trial as the weapon used by the man in the attack.

The defendant did not present any evidence. The judge refused to give two instructions submitted by the defendant to the jury. One dealt with prior inconsistent statements and the other concerned an instruction on the definition of battery as a lesser included offense of the original indictment of indecent liberties with a child.

During the closing arguments, the Assistant State's Attorneys made three statements which the defendant now claims unfairly prejudiced his cause. One prosecutor said that "maybe this was a perfect way for [Carl] * * * to be introduced to sex." Another prosecutor, in his closing argument, suggested that the defendant did not in fact urinate on Carl but ejaculated on him. The defendant objected to both statements and made a motion for mistrial because of the latter. The objections were sustained, the statements were stricken from the record, the jury instructed to disregard the remarks, but the motion for mistrial was denied. The jury was also told by the Assistant State's Attorney that Carl Davis' youth abruptly ended when he was confronted by the defendant and that Carl sees the defendant at night in his dreams. The prosecutor also said that Carl was only a boy pitted against a man, the defense attorney, who had tried to trick and cajole and confuse the boy. The defendant's objection to both of these statements was overruled.

The defendant contends that Carl Davis' testimony of his report of the attack to his sister and his description of his assailant to the police is

inadmissible hearsay. The defendant characterizes the testimony as hearsay because he says it was offered solely to show that a man fitting the description given to the police committed the act described to Carl's sister. The testimony, according to the defendant, was an attempt by the State to buttress its case by showing that Carl's in-court description of the man and the attack was consistent with his prior statements on the matter. Such bolstering, the defendant states, is only valid if it fits within three narrow exceptions to the hearsay rule: a spontaneous utterance, corroboration of a prompt complaint in rape cases, and rebuttal to a charge that testimony was recently fabricated. Since none of these situations are present, the defendant argues, Carl's testimony was inadmissible.

The defendant's argument confuses two evidentiary concepts. In Illinois, at least, it is recognized that an out of court statement testified to in court is not impaired by hearsay objections when the statement was made out of court by a witness actually testifying. (*People v. Clark* (1972), 52 Ill. 2d 374, 389, 288 N.E.2d 363, 371; *People v. Carpenter* (1963), 28 Ill. 2d 116, 121, 190 N.E.2d 738, 741-42.) This is because the availability of a witness in court for cross-examination assures that the statements' trustworthiness can be tested, obviating hearsay implications and thus making the hearsay rule inapplicable. (*People v. Clark* (1972), 52 Ill. 2d 374, 389, 288 N.E.2d 363, 371.) In this case since the defendant was able to subject Carl to questioning about his statements, Carl's testimony of his report of the incident to his sister and his description of the assailant to the police should not have been barred as hearsay. This does not mean, however, that Carl's statements were admissible evidence. As noted in *People v. Clark* (1972), 52 Ill. 2d 374, 389, 288 N.E.2d 363, 371:

> "Although not within the purview of the hearsay rule, the exclusion of [prior consistent statements] * * * is supported by the general rule that *a witness may not testify as to statements he made out of court for the purpose of corroborating his testimony given at the trial relative to the same subject. (People v. Wesley,* 18 Ill. 2d 138; *People v. Fox,* 269 Ill. 300.) However, to rebut a charge or an inference that the witness is motivated to testify falsely or that his testimony is of recent fabrication, evidence is admissible that he told the same story before the motive came into existence or before the time of the alleged fabrication. (*Lyon v. Oliver,* 316 Ill. 292, 303; Cleary, Handbook of Illinois Evidence (2d ed. 1963),
>
> sec. 9.12.)" (Emphasis added.)

No complaint of recent fabrication on Carl's part is evident from the record. The sole purpose of the introduction of the statements appears to be the State's attempt to bolster its case by corroborating Carl's in court

testimony. See *Clark; People v. Buckley* (1976), 43 Ill. App. 3d 53, 55, 356 N.E.2d 1113, 1114.

■■ We do not believe, however, that the admission of the statements warrants a reversal and a retrial of this case. Such remedy is only necessary when the improper corroboration is so prejudicial as to deprive the defendant of his right to a fair trial. (*Buckley.*) Here, Carl's recognition of the defendant as he passed his house, Carl's identification of the defendant in court, and Martin's corroborating testimony makes the effect of the challenged statements merely cumulative. As the court ruled in *People v. Torres* (1974), 18 Ill. App. 3d 921, 929, 310 N.E.2d 780, 786, when improper evidence is admitted into a trial, reversal is not warranted where the same matter has been proved by competent evidence. We do not understand the defendant to argue that the rest of the evidence in the case is insufficient to prove his guilt beyond a reasonable doubt and we do not believe that a different verdict would result if a retrial were totally free of the improper corroborative evidence. (See *People v. Wilson* (1972), 51 Ill. 2d 302, 281 N.E.2d 626.) For these reasons we find that Carl's testimony of his report of the attack to his sister and his description of the assailant to the police was, at most, harmless error beyond a reasonable doubt. *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.

■■ The defendant also characterizes several statements made by the prosecutors in their closing remarks as prejudicial error, so inflammatory and misleading that they deprived him of a fair trial. The statements in which prosecutors speculate about Carl's introduction to sex and suggest that the defendant ejaculated, not urinated, on Carl after the assault, were stricken by the judge and the jury was instructed to disregard them. In other statements, a prosecutor described the defendant's attorney as an educated man who was trying to confuse the young boy, Carl, when he questioned the boy on cross-examination. Although an objection to the statement was made at trial, the objection was overruled.

Like the corroboration testimony discussed earlier, none of these incidents can be designated as the type of impropriety which would so prejudice the jury against the defendant as to require a reversal of the verdict and a new trial. In the first instance, the judge quickly acted to dispel any improper consequences. In the second, the statement, if improper, when weighed against the entire record, is not of the magnitude substantial enough to necessitate a reversal. (*People v. Martinez* (1977), 45 Ill. App. 3d 939, 943, 360 N.E.2d 495, 498; see also *People v. Weaver* (1972), 7 Ill. App. 3d 1104, 1107, 288 N.E.2d 669, 671.) A prosecutor has a great latitude in presenting his closing argument. (*People v. Franklin* (1976), 42 Ill. App. 3d 408, 421, 355 N.E.2d 634, 645.) The

comments contested here in light of the evidence in the case, did not exceed this latitude.

Finally, the defendant argues that the judge erred in refusing to give the jury an instruction on battery as a lesser included offense of indecent liberties with a child and an instruction on the evidentiary effect of a prior inconsistent statement. A lesser included offense is established by proof of the same or less than all of the facts or less culpable mental state than that which is required to establish a commission of the offense. (Ill. Rev. Stat. 1977, ch. 38, par. 2—9.) The indictment charged lewd fondling and touching with intent to arouse sexual desire. (Ill. Rev. Stat. 1977, ch. 38, par. 11—4(a)(3).) Battery comprehends a touching which is provoking or insulting. (Ill. Rev. Stat. 1977, ch. 38, par. 12—3.) Just because both crimes require a showing of "touching" does not make battery a lesser included offense of indecent liberties with a child. The proof needed to show lewd fondling qualitatively differs from the proof necessary to prove the offensive behavior encompassed by the act of battery. Battery deals with a question of consent or lack of it; a conviction for indecent liberties with a child does not. Since the latter does not circumscribe the former the instruction was properly refused.

■■ An instruction relating to prior inconsistent statements is intended to inform the jury of the impeaching effect which statements made prior to trial have on a witness' credibility when those statements are inconsistent with the witness' testimony at trial. In this case, on direct examination, Carl Davis stated the names of his current and former teachers. On cross-examination, Carl testified that a statement made at a preliminary hearing could be taken as inconsistent with his testimony. But the names of Carl's former teachers have no bearing on any significant issue in this case, and any impeachment on this matter can only be collateral. To the extent that Carl made any prior inconsistent statements, the inconsistency was insignificant in the light of the evidence as a whole. The instruction regarding the prior inconsistent statements was properly refused by the trial court.

Therefore, we affirm the decision of the circuit court of Cook County.

Affirmed.

McNAMARA and McGILLICUDDY, JJ., concur.