654

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOHN ZEMBLIDGE, Defendant-Appellant.

First District (5th Division)    No. 80-1463

Opinion filed February 19, 1982.

Ralph Ruebner, of State Appellate Defender's Office, of Chicago, and Peter B. Nolte, of Rockford, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Richard F. Burke, and Barry A. Gross, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WILSON delivered the opinion of the court:

Following a jury trial, defendant was convicted of armed robbery (Ill. Rev. Stat. 1975, ch. 38, par. 18—2), burglary with intent to commit armed robbery (Ill. Rev. Stat. 1975, ch. 38, par. 19—1) and rape (Ill. Rev. Stat. 1975, ch. 38, par. 11—1(a)). He received a six-year sentence for rape and a six-year sentence for armed robbery. On appeal, defendant asserts that the trial court erred (1) when it refused to accept his waiver of a jury trial and (2) when it refused to allow the defense to rehabilitate one of its witnesses after impeachment by the State. The pertinent facts follow.

Prior to trial, defendant moved to suppress testimony concerning a lineup procedure which was denied.

At the trial, the victim testified that she was living on North Richmond on the night of January 15, 1976. She heard a knock and went to investigate, whereupon she observed a black man through the window. He asked for "Roberto" and she told him to go to the front of the building. He returned approximately two minutes later and asked to use the telephone. She told him she did not have a telephone and then she went to dial the police. The apartment door was then broken open by defendant, who was not the same man who previously knocked on the door. Defendant was a tall white person with light curly hair, holding a revolver in his hand. He tore the telephone off the wall and then demanded money. She gave him $10 and he told her to follow him. In the living room, he told her to open her blouse and then pushed her into the bedroom, where he forced her to have sexual intercourse with him. After he left, she went to her landlord's house and called the police.

Approximately two weeks later, she observed defendant and the black man, who had initially knocked on her door, walking down the street. Police were called, and she later attended a lineup where she identified defendant as her assailant.

Defendant's mother testified that on the date in question, defendant came home from work at approximately 8 p.m. and had invited some friends over. She stated that she watched television and talked with defendant and his friends from 10 until 11 p.m.

Lisa Matza also testified for defendant. She stated that she went to defendant's home around 9:10 p.m. on January 15, 1976, and that they watched television and talked. She left his home somewhere between 11:05 and 11:10 p.m. She further testified that after she heard that defendant had been arrested for the January 15 incident, she recalled the party on that date because she had written it down in her datebook, which she still possessed.

Lisa was questioned about the datebook on cross-examination. At that point, the State made a motion to exclude the use of the datebook because it was not provided to the State in pretrial discovery. Defense counsel claimed that he had only become aware of its existence the prior evening and that given the nature of the cross-examination of the witness calling into question the existence of the book and its validity, the defense should be allowed to introduce the book on redirect to rehabilitate their witness. The trial court determined that the datebook was not admissible because it was hearsay and not admissible under any exception.

Defendant also testified on his own behalf denying that he raped or robbed the victim.

After the parties had tendered jury instructions, defendant made a motion to waive the jury. The court denied this motion and instructed the parties to proceed with closing arguments. This appeal followed.

OPINION

Defendant argues that refusal to accept the jury waiver, at the conclusion of all testimony but before closing arguments, was error. We disagree.

The power to waive a jury trial follows the existence of the right to be tried by a jury. (*People v. Muniz* (1964), 31 Ill. 2d 130, 198 N.E.2d 855; *People v. Spegal* (1955), 5 Ill. 2d 211, 125 N.E.2d 468.) Section 115—1 of the Criminal Code (Ill. Rev. Stat. 1979, ch. 38, par. 115—1) mandates the jury trial; however, upon waiver, defendant undoubtedly has the right to a bench trial. (*People v. Powell* (1981), 95 Ill. App. 3d 93, 419 N.E.2d 708.) The real concern in this matter, however, is the timeliness of defendant's waiver.

■■ Defendant had elected a jury trial, all testimony had been heard and the court had conducted a jury instruction conference. Defendant only attempted to waive the jury at the commencement of final arguments. This motion was objected to by the State and, the court, acknowledging that the evidence had already been presented, denied this motion. We believe that under these circumstances this action was proper.

The authorities cited by defendant to support his position are distinguishable from the present instance. See *People v. Spegal*, where the attempt to waive jury trial was made before trial and without objection by the State. Our supreme court concluded it was error for the trial court to override the defendant's choice of whether he was to be tried by a jury or by the court. In *Spegal*, defendant's attempted motion was timely; in this instance, it was not. And similarly, in *People v. Reed* (1974), 23 Ill. App. 3d 546, 319 N.E.2d 557, defendant made a pretrial motion to waive the jury, where the record in the instant case does not disclose any such attempt.

■■ While it is true as defense counsel argues that the statute (Ill. Rev. Stat. 1979, ch. 38, par. 103—6) does not place any limitation on the time when a waiver can be made, we believe that a limitation is inherent in the language of the statute; otherwise, our criminal system and procedure becomes subject to the whims of defendants and our judicial process becomes a mockery. Practically speaking, every attorney would advise his client to elect a jury trial and at the conclusion of the evidence, if things did not look favorable, a defendant would be urged to waive this method of trial. We believe this trial strategy would impede the prompt and fair administration of justice, would be an improper utilization of jurors' time, and a waste of State resources and expenditures. These policy considerations prompt us to conclude that once an election for a jury trial is made and testimony begins, defendant has no absolute right to waive the jury. Just as a motion to withdraw a jury waiver is addressed to the sound discretion of the trial court (*People v. Simpson* (1979), 74 Ill. App. 3d 531,

393 N.E.2d 740) and considered untimely after commencement of trial (*People v. Norris* (1978), 62 Ill. App. 3d 228, 379 N.E.2d 80), so, too, should a motion to waive the jury after commencement of trial be addressed to the sound discretion of the trial court and allowed only if these policy considerations are minimized.

Lastly, defendant contends that the court erred in refusing to allow the defense to attempt to rehabilitate defense witness Lisa Matza by admitting into evidence her diary entry for the date of the alleged offense. We disagree.

A prior out-of-court statement of a witness may not be admitted to corroborate his testimony at trial, except to rebut a charge or inference that the witness is motivated to testify falsely or that his testimony is of recent fabrication. (*People v. Clark* (1972), 52 Ill. 2d 374, 288 N.E.2d 363.) The prior consistent statement exception applies if the statement is offered to rebut a charge of recent fabrication, and if the declarant told the same story before the motive came into evidence or before the time of the alleged fabrication. *People v. Andino* (1981), 99 Ill. App. 3d 952, 425 N.E.2d 1333.

■■ In this instance, Lisa was questioned on direct examination about her recollection of the events of January 15, 1976. She indicated that she remembered the date and the party because she had written it in her datebook. On cross-examination, the State asked Lisa about entries in her datebook before and after January 15, 1976. Defense counsel's request to use the diary in redirect to rehabilitate the witness was denied. It appears that at the time the existence of the datebook was brought to the trial court's attention, the only purpose it could serve would be to enhance the reliability of Lisa's testimony. (*People v. Hahn* (1976), 39 Ill. App. 3d 969, 350 N.E.2d 839.) We do not believe that the cross-examination of Lisa injected a fabrication notion in her testimony. Furthermore, there was no way to verify when the date notation was made and, thus, its function to "rehabilitate" is suspect. As such, we believe that the trial court properly denied defense counsel's request to admit the datebook into evidence.

Moreover, Lisa was only one of several defense alibi witnesses and her testimony regarding the datebook was only cumulative of testimony already offered by her and other witnesses. (See *People v. Smith* (1978), 64 Ill. App. 3d 1045, 1048-49, 382 N.E.2d 298.) The datebook added nothing to defendant's alibi of his activities on the date in question.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

SULLIVAN, P. J., and MEJDA, J., concur.