THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
GEORGE STAMOS, Defendant-Appellant.

First District (2nd Division)   No. 1—89—0441

Opinion filed May 28, 1991.

896

Thomas Peters and William P. Murphy, both of Chicago, for appellant.

John O'Malley, State's Attorney, of Chicago (Renee Goldfarb and David Stabrawa, Assistant State's Attorneys, of counsel), for the People.

JUSTICE DiVITO delivered the opinion of the court:

A jury found defendants George Stamos (defendant) and Paul Kristalidis (Kristalidis) guilty of delivery of a controlled substance and armed violence. Defendant was sentenced to concurrent seven-year terms in prison. On appeal, defendant raises as issues: (1) whether the circuit court erred in denying his motion for a severance from his co-defendant; (2) whether the circuit court erred in denying his motion for a mistrial based on an alleged reference by a witness to his failure to testify; (3) whether the circuit court erred in denying his motion to waive a jury trial after all testimony had been presented; and (4) whether he was proven guilty of armed violence beyond a reasonable doubt.

On June 24, 1987, defendant was arrested for and later charged by indictment along with Kristalidis with delivery of a controlled substance, unlawful possession of a weapon, and armed violence. (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(b)(2); Ill. Rev. Stat. 1987, ch. 38, par. 24—1(a)(7); Ill. Rev. Stat. 1987, ch. 38, par. 33A—2.) On January 11, 1989, the day jury selection was to begin, defendant's attorney moved for a severance from Kristalidis on the grounds that defendant and Kristalidis had mutually antagonistic defenses. The court denied the motion, and trial of both defendant and Kristalidis proceeded.

Sergeant James Gentilcore of the Illinois Department of State Police was the prosecution's first witness. According to Gentilcore, on January 27, 1987, he was involved in an ongoing investigation of Kristalidis. Prior to this date, in November 1987, Gentilcore had met with Kristalidis, who had identified himself as "Nick the Greek." At this

meeting, Kristalidis asked Gentilcore if he wanted to "conduct business" with him that day. Kristalidis then gave Gentilcore a clear plastic bag containing a purported ounce of cocaine and, in return, Gentilcore gave him $1,900. Also at this meeting, Gentilcore and Kristalidis exchanged pager numbers.

In January 1987, Gentilcore again met with Kristalidis and, during this meeting, Kristalidis gave Gentilcore a telephone number where he could be reached if Gentilcore wanted to make additional purchases. Kristalidis instructed Gentilcore that if he was not there, his roommate George would make sure that he received the message. Gentilcore and Kristalidis also agreed that the code "999" would be inserted at the end of phone numbers when using the pager in order to identify who was calling.

On January 27, 1987, at 12:43 p.m., Gentilcore called the number given to him by Kristalidis and spoke to a man who identified himself as "Allen." Gentilcore, after meeting defendant, recognized the voice of "Allen" as that of defendant. During the phone conversation, defendant told Gentilcore that Kristalidis was sleeping; defendant further stated that he was aware of the cocaine sale and, as far as he knew, it was a "go." Defendant then told Gentilcore to call back at around 5 p.m.

At approximately 5 p.m., Gentilcore called Kristalidis' number and again spoke with defendant, who told him that Kristalidis had left earlier to obtain the cocaine and asked him to call back later. At around 5:50 p.m., Gentilcore called again and spoke with defendant, who stated that he had spoken with Kristalidis and that Kristalidis would call or page Gentilcore so that arrangements could be made to meet later. At approximately 6:40 p.m., Gentilcore received a page from Kristalidis with his number followed by "999." When Gentilcore returned the call, Kristalidis instructed him to come to his home at 3629 North Whipple and to ring the unmarked, lighted doorbell.

After arranging for backup and surveillance and preparing a listing of the marked bills, Gentilcore arrived at Kristalidis' residence at approximately 8:20 p.m. He pressed the unmarked, lighted doorbell and, one minute later, the door was answered by defendant, who asked Gentilcore if he was "Jim." Gentilcore replied that he was, and defendant instructed him to go up the stairs to the second-floor apartment where they had an ounce of cocaine for him. Gentilcore then followed defendant into the second-floor apartment, where Kristalidis was seated on a mattress next to a table. On the table was a knife and a two-inch by four-inch board with white powder on it.

After Gentilcore entered the apartment, Kristalidis reached under the mattress and pulled out a single-barreled sawed-off shotgun and pointed it at Gentilcore, stating that he was interested in selling the gun. Gentilcore then grabbed the gun away from Kristalidis, warning him that it might be loaded. Kristalidis grabbed the gun from Gentilcore and attempted to remove the shells from the gun; he was able to remove one of the shells, two were removed later. Gentilcore again took the gun away from Kristalidis and, at this time, defendant requested to see the gun. Gentilcore handed the gun to defendant, who examined it and stated that "whoever cut down the barrel did a bad job because it wasn't smooth because there appears to be rust on the barrel."

After showing Gentilcore the gun, Kristalidis removed from under the mattress a clear plastic bag containing cocaine which he described as "rock," meaning high quality, pure cocaine. After the cocaine was weighed, defendant told Gentilcore that the cocaine was mostly "rock" and that he would "be able to cut it several times before" selling it and "make a lot of money with this stuff."

Gentilcore asked Kristalidis what price he wanted for the cocaine and the gun; Kristalidis responded that he wanted $1,600 for the cocaine and $150 for the shotgun. After some negotiations, Gentilcore and Kristalidis agreed upon $1,600 for the cocaine and $100 for the gun. Before giving the gun to Gentilcore, Kristalidis took it from defendant and showed Gentilcore how to conceal the gun while carrying it. After wiping off his fingerprints from the gun, Kristalidis gave it to Gentilcore, who then left with the cocaine, the gun, and the shotgun shells removed from the gun.

At trial, Gentilcore testified to further meetings and drug buys from Kristalidis. Defendant objected to the testimony on the basis that he was not a participant in these drug transactions. The court, however, allowed the testimony but admonished the jury that it could not consider the evidence against defendant.

Defendant also objected to Gentilcore's testimony, after he was asked why he did not test for fingerprints on the bag of cocaine, that "it comes down to a credibility issue. It's either I am lying or their [sic] telling the truth or vice versa." Based upon this testimony, defendant moved for a mistrial, alleging that Gentilcore's statement "shifts the burden upon defendant to testify." The court denied defendant's motion.

After the close of the evidence, defendant's counsel attempted to waive the jury; the court, however, denied defendant's request, stating, "I think once you have a jury and the jury is here and selected

and [has] heard evidence, it's more appropriate that the case continue to the jury."

Following closing arguments, the jury found both defendant and Kristalidis guilty of armed violence and delivery of a controlled substance. After the court imposed sentence, defendant appealed.

I

Defendant initially contends that the circuit court erred in refusing to grant a severance. Specifically, defendant maintains that the admission of evidence of other crimes committed by Kristalidis unfairly prejudiced his case and, thus, denied him a fair trial.

As a general rule, defendants who are jointly indicted are to be tried jointly unless a separate trial is necessary to avoid prejudice to one of the defendants. (*People v. Bean* (1985), 109 Ill. 2d 80, 92, 485 N.E.2d 349.) Two separate grounds exist to justify severance: the first is the confrontation problem which arises when the prosecution attempts to implicate one defendant with the statements of the other defendant; the second is when the defendants' defenses are so antagonistic that one defendant cannot receive a fair trial when tried jointly. (*People v. Byron* (1987), 116 Ill. 2d 81, 92, 506 N.E.2d 1247; *People v. Olinger* (1986), 112 Ill. 2d 324, 346, 493 N.E.2d 579.) There is no automatic right, however, to be tried separately. (*Byron*, 116 Ill. 2d at 92.) In order to justify a severance, a defendant must demonstrate specifically in his pretrial motion the prejudice complained of; mere apprehensions of prejudice are insufficient. (*Byron*, 116 Ill. 2d at 92.) Furthermore, the decision to grant a severance is within the sound discretion of the circuit court and will not be reversed absent an abuse of that discretion. *Byron*, 116 Ill. 2d at 92.

In the instant case, defendant has alleged neither of the traditional forms of prejudice; rather, he has made only general assertions of prejudice resulting from the admission of evidence of crimes committed by Kristalidis. Relying upon *People v. Edwards* (1976), 63 Ill. 2d 134, 345 N.E.2d 496, he maintains that the evidence of additional drug buys introduced against Kristalidis in and of itself warranted severance. Defendant avers that this evidence of other crimes was not admissible against him and its admission was therefore highly prejudicial.

Defendant's reliance on *Edwards*, however, is misplaced. In *Edwards*, a single defendant was charged with armed robbery, misdemeanor unlawful use of a weapon, and felony unlawful use of a weapon—which required proof of a prior felony conviction. The defendant moved for a severance of the charge of felony unlawful use

of a weapon, contending that the evidence of a prior burglary conviction to support the felony unlawful use of a weapon charge would prejudice him in the trial on the other counts. The court denied his motion. On review, however, the supreme court found that the joinder of the counts created a strong possibility of prejudice to the defendant's defense of the armed robbery charge and a severance should have been granted. *People v. Edwards*, 63 Ill. 2d at 140.

■■ In the instant case, the record discloses no confusion and no possibility of prejudice to defendant. The circuit court admonished the jury several times during trial that the evidence admitted against Kristalidis could not be considered against defendant. The court further instructed the jury that it was to give separate consideration to each defendant and that any evidence which was limited to one defendant was not to be considered against the other defendant.

Thus, the circuit court did not abuse its discretion in refusing to grant defendant's request for a severance. Furthermore, defendant was not prejudiced by the admission of evidence of crimes committed by Kristalidis where it was clear that defendant took no part in those crimes and the court admonished the jury not to consider that evidence against defendant. *People v. Harris* (1990), 198 Ill. App. 3d 1002, 556 N.E.2d 709.

## II

Defendant next contends that the circuit court erred in failing to grant a mistrial after one witness allegedly commented upon defendant's failure to testify. In response, the prosecution maintains that the witness' response was neither a direct nor an indirect reference to defendant's failure to testify.

During cross-examination, Sergeant Gentilcore was asked whether any reports showed that fingerprints appeared on the gun, the shells, or the bag containing cocaine. Gentilcore responded that no reports contained this information. On redirect, Gentilcore provided the following testimony:

> "Q. Sergeant, you indicated that the plastic bag was [not] tested for fingerprints, is that correct?
> A. That is correct.
> Q. Why not?
> A. Well, it comes down to a credibility issue. It's either I am lying or their [*sic*] telling the truth or vice versa."

■■ In the instant case, defendant is correct in his assertion that direct reference to a defendant's decision not to testify violates his fifth amendment rights. (*Chapman v. California* (1967), 386 U.S. 18,

17 L. Ed. 2d 705, 87 S. Ct. 824.) Moreover, a prosecutor's indirect reference, if it is intended to direct the jury's attention to a defendant's failure to testify or the jury "would naturally and necessarily take it to be [a] comment on the defendant's failure to testify," violates a defendant's rights. (*United States v. Lyon* (7th Cir. 1968), 397 F.2d 505, 509.) Neither of these situations, however, is present in the instant case.

■ Here, Gentilcore's statement addressed why he did not think it was necessary to take fingerprints: because he, himself, was a witness to the cocaine sale. His statement did not impugn defendants, either explicitly or implicitly, for failing to testify. Further, it was not the prosecutor who made the allegedly prejudicial statement; rather, it was a witness, responding in a proper manner to the question posed.

Although defendant urges that Gentilcore's statement addressed his failure to testify, most likely because the reference was to "telling" the truth, he has not offered any authority to support this contention. Moreover, the statement was not made to direct the jury's attention to defendant's failure to testify nor would the jury naturally and necessarily take it to be a comment on defendant's failure to testify. Consequently, the circuit court did not err in refusing to grant defendant's motion for a mistrial.

### III

Defendant next contends that the circuit court's refusal to accept his jury waiver at the conclusion of all the testimony, but before closing arguments, was error. Defendant predicates his demand for a bench trial upon allegedly prejudicial errors committed during the opening statement, upon the denial of a severance, and upon the denial of a mistrial. In response, the prosecution maintains that, where defendant had elected a jury trial before commencement of the trial and all the evidence had been presented to the jury, the court's decision to deny the motion was proper.

■ The power to waive a jury trial corresponds to the existence of the right to be tried by a jury. (*People ex rel. Daley v. Joyce* (1988), 126 Ill. 2d 209, 533 N.E.2d 873; *People v. Spegal* (1955), 5 Ill. 2d 211, 125 N.E.2d 468.) Moreover, the dimension of the constitutionally protected right to a jury trial encompasses the right of an accused to waive trial by jury. (*People ex rel. Daley v. Joyce*, 126 Ill. 2d at 222.) The issue here, however, is not the defendant's right to a waiver, but rather the timeliness of his request for a waiver.

In the instant case, defendant had elected a jury trial and all testimony had been heard before defendant attempted to waive the jury. The court, acknowledging that the evidence had already been presented, denied defendant's motion.

Notwithstanding the late attempt to waive the jury, defendant urges this court to analogize his right to waive a jury with such inviolable rights as the right to remain silent, the right to counsel during custodial interrogations, and the right to plead guilty. Defendant maintains that these rights may be exercised at any point and a defendant does not ever "waive" these rights. Thus, defendant argues, he should be able to exercise his right to waive a jury at any point during trial, even after all the evidence has been presented to the jury.

In support of his contention, defendant relies upon *Joyce*. The court in *Joyce* addressed the issue of whether a statute requiring consent by the State to a jury waiver violated the Illinois constitutional provision guaranteeing the right of trial by jury. The Illinois Supreme Court found that the constitutionally protected right to a trial by jury clearly encompassed the right of an accused to waive a trial by jury; thus, the court held that the statute requiring the State's consent to a jury waiver infringed upon a defendant's constitutional right. (*People ex rel. Daley v. Joyce*, 126 Ill. 2d at 222.) The court, however, did not address whether a defendant's right to a jury trial may be exercised at any point during trial.

■ Although it is true that section 115—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 115—1) does not place any limitation on the time during which a waiver can be made, this court has held, in a case similar to the instant case, that "a limitation is inherent in the language of the statute." *People v. Zemblidge* (1982), 104 Ill. App. 3d 654, 656, 432 N.E.2d 1138.

In *Zemblidge*, the defendant attempted to waive the jury after having requested a jury at the commencement of trial, after all the evidence had been presented, and after the instruction conference had taken place. The trial court denied the defendant's motion. In affirming the court's denial of the defendant's request, the *Zemblidge* court concluded that,

> "once an election for a jury trial is made and testimony begins, defendant has no absolute right to waive the jury. Just as a motion to withdraw a jury waiver is addressed to the sound discretion of the trial court [citation] and considered untimely after commencement of trial [citation], so, too, should a motion to waive the jury after commencement of trial be addressed to the

sound discretion of the trial court ***." *People v. Zemblidge*, 104 Ill. App. 3d at 656-57.

■■ Despite the clear holding of *Zemblidge*, defendant attempts to dismiss the case as "pre-*Joyce*." The holding in *Joyce*, however, does not affect the holding in *Zemblidge*. *Zemblidge* does not attempt to deny the right to a jury waiver; rather, *Zemblidge* supports a defendant's right to a jury waiver unconditionally until trial begins. We agree, however, with the *Zemblidge* court that a defendant has no automatic right to waive a jury after trial commences, particularly, as in the instant case, after all the evidence had been presented. A jury waiver after commencement of trial is thus addressed to the sound discretion of the circuit court. For the reasons given in part I of this opinion, we reject defendant's contention that the introduction of the other crimes evidence against Kristalidis necessitated the allowance of defendant's waiver motion. We conclude that the circuit court did not abuse its discretion in refusing to allow defendant to waive the jury in this case.

## IV

Defendant lastly contends that his armed-violence conviction must be reversed because the prosecution did not prove a necessary element of the offense. Specifically, defendant maintains that the prosecution failed to prove that defendant was "armed" with a dangerous weapon during commission of the felony offense. In response, the prosecution contends that, where defendant had on his person a sawed-off shotgun during negotiations for the sale of cocaine, he was armed with a dangerous weapon during the commission of a felony.

■■ The applicable statutes provide that a "person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law." (Ill. Rev. Stat. 1987, ch. 38, par. 33A—2.) "A person is considered armed with a dangerous weapon *** when he carries on or about his person *** [a] sawed-off shotgun ***." Ill. Rev. Stat. 1987, ch. 38, par. 33A—1.

Defendant contends that his conviction for armed violence must be reversed because the shotgun was present only to be sold to Gentilcore and not used during commission of the offense. However, "the mere presence of a weapon of the proscribed character is sufficient; the defendant need not actually use the weapon in the commission of the felony." (*People v. Alejos* (1983), 97 Ill. 2d 502, 508, 455 N.E.2d 48; *People v. Haron* (1981), 85 Ill. 2d 261, 422 N.E.2d 627.) Although the statute does not require the use of the weapon during commission of the felony, it does require that the person carry the weapon on or

about his person or be otherwise armed. *People v. King* (1987), 155 Ill. App. 3d 363, 369, 507 N.E.2d 1285.

In the instant case, defendant held and examined the sawed-off shotgun during negotiations of the cocaine sale. Further, defendant commented upon the condition of the gun while he was holding it. Notwithstanding defendant's intention of selling the gun, he clearly had the gun in his possession during the sale of the cocaine; this is enough to put defendant's actions within the purview of the armed-violence statute.

The purpose of the armed-violence statute is to deter a person who commits a felony offense from using a dangerous weapon. Because the availability of a dangerous weapon enhances the risk that a felony will have deadly consequences, the availability of the weapon is viewed as an aggravating factor which enhances the severity of the predicate felony. (*People v. Alejos*, 97 Ill. 2d at 508.) Here, the availability and possession of a sawed-off shotgun during the cocaine sale increased the danger of injury or death.

Possession and knowledge are questions of fact for the jury, and such findings will not be set aside on review unless the evidence is so palpably contrary to the verdict, or so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of guilt. (*People v. Valentin* (1985), 135 Ill. App. 3d 22, 31, 480 N.E.2d 1351.) Here, it cannot be said that the jury's verdict was against the weight of the evidence; accordingly, the defendant's conviction will not be reversed.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

HARTMAN and COCCIA, JJ., concur.