THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES RAND, Defendant-Appellant.

First District (1st Division)    No. 1—95—2451

Opinion filed July 7, 1997.

Rita A. Fry, Public Defender, of Chicago (James N. Perlman, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and Michele Grimaldi Stein, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'BRIEN delivered the opinion of the court:

Following a jury trial, defendant, James Rand, was found guilty of stalking Michelle Fire (hereinafter Fire) and sentenced to three years' imprisonment. Defendant appeals, contending: (1) the trial court erred by denying his request to waive a jury trial; (2) the stalking statute is unconstitutional; (3) the jury instructions deprived him of his right to a unanimous verdict; (4) the trial court improperly failed to appoint separate counsel and hold an evidentiary hearing regarding the claim of ineffective assistance of counsel raised in his *pro se* motion for new trial; and (5) the trial court erred by failing to give Illinois Pattern Jury Instructions, Criminal, No. 24—25.06A (3d ed. 1992). We affirm.

At trial, Fire testified she is the owner of a predominantly gay men's bar located on North Sheridan Road. At approximately 6:30 p.m. on April 2, 1994, Fire was walking to the bar when defendant approached her near Glenwood and Olive. Fire had never seen defendant before.

Fire testified defendant began to walk alongside her and asked her where she was going. Fire responded only that she was going in a specific direction. Defendant continued to walk next to Fire, and he subsequently told her he had just gotten out of prison, where he had been serving time for gun charges. Defendant also told Fire he was a male prostitute and his father beat him. As Fire continued to walk rapidly toward her bar, she told defendant that these were strange things to talk about with someone he had just met.

Fire testified that defendant then told her his parole officer was a lesbian who was out to get him. Defendant also stated he was a martial arts expert. Around this time, Fire turned the corner at Foster and found herself on the inside of the sidewalk between defendant and the buildings there. Defendant proceeded to tell Fire that she was probably thinking he wanted to do "lewd and lascivious things" to her body. Fire responded that she was not thinking about anything, and defendant told her "more white women get raped by black men than by white men."

Fire testified she felt in immediate danger and told defendant to cross the street and get away from her. Fire waited until defendant

crossed the street and was out of her line of sight before she proceeded to her bar. When Fire arrived at the bar, she called the police, but they would not take a report because she did not know defendant's identity. After talking to the police, Fire called her female staff members, described defendant for them and told them to be careful.

Fire testified that around 10 p.m. on April 2, she was standing in the doorway of the bar greeting customers when defendant approached her and told her he wanted to speak with her. Fire told defendant she did not want to talk to him and that she was going to call the police. Defendant responded by saying "You don't understand. You don't understand. You are just an angry lesbian. You are nothing but angry lesbians. I'm a good-looking straight white man and you don't want me in there. That's what I am." Defendant then paced up and down in front of the bar, made karate moves, and stated he was a criminal defense attorney and a dangerous person.

Fire testified defendant started to walk south on Sheridan Road towards Argyle. Fire called 911 and then she and her doorman, Michael Daugherty, followed defendant from a distance of 30 to 40 feet. A friend of Fire's drove up, and Fire and Michael entered the car. They proceeded to follow defendant into Andersonville. Defendant noticed them, "stormed the car" and started banging on the car.

Fire testified defendant proceeded down an alley, and Fire got out of the car, ran into a restaurant and asked the owner to call the police. Defendant then "stormed out" of a gangway and started screaming. Defendant subsequently disappeared in some bushes, and Fire returned to her bar.

Fire testified she saw defendant again in June, when he peered in the window of her bar and tried to make eye contact with her. On July 16, defendant again appeared at the bar and asked "Why won't you let me in? You are nothing but an angry lesbian. I'm a good-looking straight white man." Fire did not respond to defendant. James Murray, a bartender and doorman at the bar, testified defendant paced in front of the bar for about 10 minutes and then left. Fire testified defendant also appeared at the bar on August 4 and tried to engage her in the "usual" way. However, she refused to talk to him.

Officer John Anderson testified that on August 10, 1994, he received a report of a disturbance in the aldermanic office located at 5457 North Broadway. Officer Anderson went to the office, but the person causing the disturbance had left. Anderson left his pager number, and he was paged about five minutes later. Anderson returned to the office, where he saw defendant. Anderson arrested defendant and read him his *Miranda* rights. Defendant told Anderson

he was aware of his rights because he was a criminal defense specialist. Defendant also said "this was a lesbian conspiracy orchestrated by Michelle Fire" and he said he was "going to get that lesbian [expletive]." Anderson contacted Fire, who later identified defendant.

Detective Susan Barrett testified that on September 22, 1994, she had a conversation with defendant in an interview room at Area Three police headquarters. Defendant said he first encountered Fire at Glenwood and Olive on April 2, 1994. Defendant said that Fire immediately told him he was a good-looking man, and he felt like she wanted him to ask her for a date. Fire then told him that she worked with rape victims, and defendant replied that a white woman was more likely to be raped by a black man than a black woman by a white man. Fire was offended by defendant's comment about rape, and they parted company.

Defendant told Barrett that he saw Fire later that night in front of her bar. Fire appeared to be angry with him, and her bouncer exhibited "similar-type behavior." Defendant believed he was in danger, so he told Fire and her bouncer that he was a martial arts expert.

Defendant told Barrett that Fire began screaming at him, and she was soon joined by two or three other employees of the bar who blocked his way on the sidewalk. Defendant began to walk away, and Fire and her bouncer followed him. They all ended up in a gangway and defendant felt cornered. Defendant then told them he was a Kung Fu master and they better think twice about what they were doing. Defendant asked them to move out of the way, and they allowed him to pass.

Defendant told Barrett that Fire and her bouncer entered a car with two other individuals and again followed him. Defendant approached the car in a parking lot and asked the driver to roll down the window. When the driver refused, defendant assumed an attack position and let out a "martial arts type screaming yell." An individual in the rear passenger seat exited the vehicle, and defendant then fled and hid in some bushes for about an hour. Defendant stated he had never again been back to Fire's bar, although he did see Fire once while she was jogging and at that time she gave him a menacing look and tried to follow him.

The jury found defendant guilty of stalking and the trial court later sentenced him to three years' imprisonment. Defendant filed this timely appeal.

■ First, defendant contends the trial court erred by denying his motion to waive jury trial. Defendant's motion came after the jury had been impaneled and sworn, but before the commencement of

testimony. Defendant argues he had an absolute right to waive a jury trial prior to the beginning of testimony.

We disagree, as the cases defendant cites in support, *People v. Zemblidge*, 104 Ill. App. 3d 654 (1982), and *People v. Stamos*, 214 Ill. App. 3d 895 (1991), undermine his argument. In *Zemblidge*, the trial court denied Zemblidge's motion for jury waiver, which he made after all evidence had been presented. *Zemblidge*, 104 Ill. App. 3d at 655. We affirmed, holding that "once an election for a jury trial is made *and testimony begins*, defendant has no absolute right to waive the jury." (Emphasis added.) *Zemblidge*, 104 Ill. App. 3d at 656. Defendant contends the emphasized language in *Zemblidge* means that the trial court has discretion to deny a motion for jury waiver if made after testimony begins, but the court has no discretion to deny a jury waiver if made *any time prior* to the beginning of testimony.

Defendant is incorrect, because we also held in *Zemblidge* that "a motion to waive the jury after commencement of trial [should] be addressed to the sound discretion of the trial court." *Zemblidge*, 104 Ill. App. 3d at 657. A trial is deemed to have commenced after the jury is impaneled and sworn. *People v. Shick*, 101 Ill. App. 2d 377, 379 (1968). Thus, the trial court has discretion to deny a jury waiver after the jury is impaneled and sworn, even if testimony has not yet begun.

In *Stamos*, the defendant there also moved for jury waiver after the evidence had been presented. The trial court denied the motion, and we affirmed, holding in accordance with *Zemblidge* that "a defendant has no automatic right to waive a jury after trial commences." *Stamos*, 214 Ill. App. 3d at 904. Thus, the *Stamos* court held that, after trial commences, *i.e.*, after the jury is impaneled and sworn, the trial court has the discretion to deny a jury waiver. *Stamos*, 214 Ill. App. 3d at 904.

*People v. Frazier*, 127 Ill. App. 3d 151 (1984), also cited by defendant, is inapposite. In *Frazier*, we held that the trial court erred in denying defendant's request for a jury waiver because the request was made before the jury was picked. *Frazier*, 127 Ill. App. 3d at 152. In the present case, defendant moved for a jury waiver after the jury had been impaneled and sworn. Accordingly, the trial court had the discretion to grant or deny the motion.

■ Defendant argues the trial court abused its discretion by denying his motion to waive the jury. We find no abuse of discretion here. The record indicates that on March 10, 1995, defendant entered his formal jury demand and the case was set for trial on April 10, 1995. On April 10, the case was continued to May 10, 1995. On May 10, the State answered ready for trial, but the public defender stated he was not ready. The case was continued to May 22, 1995. On May 22, the

State answered ready for trial, and the public defender sought a continuance. The court denied the motion for continuance, and jury selection took the remainder of the afternoon. At the conclusion of jury selection, the court swore in the jurors and told them to be back the following morning at 10:45 a.m. The jurors arrived the following day as instructed, and defendant again asked for a continuance, which the trial court denied. Defendant also moved to waive jury trial. Clearly, the granting of such a motion then would have resulted in the waste of the jurors' time and of State resources expended during jury selection. Accordingly, the trial court did not abuse its discretion in denying a jury waiver. See *Zemblidge*, 104 Ill. App. 3d at 656 (factors to consider in determining whether to grant a jury waiver include whether the waiver would impede the prompt and fair administration of justice, improperly utilize the jurors' time, and waste State resources and expenditures.)

■ Defendant contends the trial court's denial of his request for a continuance on May 22 and May 23 somehow contributed to his decision to seek a jury waiver. Therefore, defendant argues the trial court should have granted the jury waiver in light of "the trial court's own role in [precipitating] the request to waive a jury trial."

We reject this argument. The trial court had continued the trial on at least two prior occasions and was under no obligation to do so a third time. Further, even if the trial court's decision to deny a continuance contributed to defendant's decision to move for a jury waiver, the trial court still had the discretion to grant or deny the motion. As discussed above, we find no abuse of discretion here.

■ Second, defendant argues the stalking statute, as amended in 1993, is unconstitutional. The statute states:

"(a) A person commits stalking when he or she, knowingly and without lawful justification, on at least 2 separate occasions follows another person or places the person under surveillance or any combination thereof and:

(1) at any time transmits a threat to that person of immediate or future bodily harm, sexual assault, confinement or restraint; or

(2) places that person in reasonable apprehension of immediate or future bodily harm, sexual assault, confinement or restraint." 720 ILCS 5/12—7.3 (West 1994).

■ Defendant notes that one element of the stalking offense is that defendant has to knowingly and without lawful justification follow or place another person under surveillance on at least two separate occasions. Defendant further notes that the stalking crime contains two subelements: defendant either must issue a threat to

the victim or place the victim in reasonable apprehension of immediate or future injury.

Defendant argues that no mental state accompanies either subelement, nor must either subelement be committed without lawful justification. Defendant also contends there is no requirement that the following or surveillance be in furtherance of the threat. Defendant further argues there is no requirement that the threat create in the victim a reasonable apprehension of injury or that the ability to carry out the threat be imminent. Accordingly, defendant claims the statute encompasses innocent conduct and is void for overbreadth.

We disagree. In *People v. Cortez*, 286 Ill. App. 3d 478 (1996), we addressed similar arguments to the constitutional validity of the stalking statute and determined that the "knowingly" and "without lawful justification" language modified the conduct described in subelements (1) and (2). *Cortez*, 286 Ill. App. 3d at 481-82. We further held that the statute proscribes only culpable conduct. *Cortez*, 286 Ill. App. 3d at 482. We adhere to our holding in *Cortez* and therefore reject defendant's argument that the statute is void for overbreadth.

■ Defendant also argues the statute is vague. Since defendant's vagueness challenge does not implicate first amendment concerns, we need only determine whether the statute is vague as it applies to the facts in his case. *Cortez*, 286 Ill. App. 3d at 482-83.

The statute will survive such a challenge if it is sufficiently definite to give "a person of ordinary intelligence a reasonable opportunity to know what conduct is lawful and what conduct is unlawful." *People v. Bales*, 108 Ill. 2d 182, 188 (1985). Definite standards are also required to avoid arbitrary and discriminatory enforcement and application by police, judges and juries. *People v. Jihan*, 127 Ill. 2d 379, 385 (1989).

Defendant knowingly and without lawful justification followed or put Fire under surveillance on at least two occasions and threatened her and put her in reasonable apprehension of harm. The stalking statute clearly warns defendant that such conduct will subject him to penalty.

Further, we adhere to our holding in *Cortez* that the stalking statute is sufficiently narrow to avoid arbitrary enforcement by the police. *Cortez*, 286 Ill. App. 3d at 483. Accordingly, the statute is not unconstitutionally vague as it applies to defendant.

■ Third, defendant contends the trial court should have instructed the jury that to find him guilty of stalking it must unanimously agree on which two of the dates charged in the information, April 2, 1994, July 16, 1994, and August 4, 1994, defendant followed or surveilled Fire. Instead, the trial court gave the following instruction to the jury:

"To sustain the charge of stalking, the State must prove the following propositions:

First: That the defendant on at least two separate occasions knowingly followed or placed Michelle Fire under surveillance; and

Second: That the defendant placed Michelle Fire in reasonable apprehension of immediate or future bodily harm.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

Defendant asserts that the above instruction permitted the jury to return a general verdict of guilty, even though: (a) four jurors might have concluded defendant followed or surveilled Fire on April 2, 1994, and July 16, 1994, but not August 4, 1994; (b) four jurors might have concluded defendant followed or surveilled Fire on April 2, 1994, and August 4, 1994, but not July 16, 1994; and (c) the remaining four jurors might have concluded defendant followed or surveilled Fire on August 4, 1994, and July 16, 1994, but not April 2, 1994. Therefore, defendant contends, the jury instruction potentially deprived him of his constitutional right to a unanimous verdict.

Initially, we note defendant waived this issue by failing to raise it in his motions for new trial. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Further, even choosing to address the issue on its merits, we find no error. Defendant relies on *People v. Scott*, 243 Ill. App. 3d 167 (1993). In *Scott*, defendant was charged with delivering controlled substances to undercover police officers on three different occasions. The State tendered six jury forms, one "guilty" and one "not guilty" form for each of the three counts with which defendant was charged. *Scott*, 243 Ill. App. 3d at 168. The trial court modified those instructions to one "guilty" and one "not guilty" form. *Scott*, 243 Ill. App. 3d at 168. The jury later returned a guilty verdict of one count of delivery of a controlled substance. *Scott*, 243 Ill. App. 3d at 168. The appellate court reversed and remanded because the trial court had "engendered the possibility of a unanimous guilty verdict only in the sense that all 12 jurors believed that defendant was guilty of one, but possibly not the same, delivery count." *Scott*, 243 Ill. App. 3d at 169.

However, the reasoning in *Scott* was rejected in *People v. Diaz*, 244 Ill. App. 3d 268 (1993). In *Diaz*, the trial court instructed the jury to convict defendant of aggravated battery if he either caused great bodily harm to the victim or caused bodily harm to her while using a

deadly weapon. *Diaz*, 244 Ill. App. 3d at 272. Following his conviction, defendant appealed and argued that the jury instruction permitted the jury to return a general verdict of guilty of aggravated battery even though one or more jurors disagreed about which alternative course of conduct defendant committed. Accordingly, defendant asserted that his constitutional right to a unanimous verdict was violated. *Diaz*, 244 Ill. App. 3d at 270. The appellate court disagreed (*Diaz*, 244 Ill. App. 3d at 271-74, citing *People v. Travis*, 170 Ill. App. 3d 873, 890 (1988)), which held "the jury need only be unanimous with respect to the ultimate question of defendant's guilt or innocence of the crime charged, and unanimity is not required concerning alternate ways in which the crime can be committed." See also *People v. Griffin*, 247 Ill. App. 3d 1, 12 (1993), and *People v. Harper*, 251 Ill. App. 3d 801, 807 (1993), which held that a jury need not be unanimous in its theory of the case, but must only be unanimous in determining defendant's ultimate guilt or innocence. We follow *Travis*, *Diaz*, *Griffin*, and *Harper* and hold that there was no constitutional violation here because the jury was unanimous regarding its ultimate conclusion that defendant was guilty of stalking.

*Schad v. Arizona*, 501 U.S. 624, 115 L. Ed. 2d 555, 111 S. Ct. 2491 (1991), cited by defendant, does not compel a different result. In *Schad*, defendant challenged his first-degree murder conviction on the grounds that the jury instructions did not require the jurors to agree on whether defendant was guilty of premeditated murder or felony murder. A four-member plurality, with Justice Scalia concurring in the judgment, rejected defendant's challenge. *Diaz* and *Griffin* provide an extensive discussion of the legal reasoning used in *Schad*, and we need not rehash that analysis here. Instead, we note our holding in *Griffin* that the rule to be derived from *Schad* is that a jury can return a single general verdict of guilty based on instructions providing alternative methods of committing a single crime, as long as the alternatives are not so divergent that they in fact are separate offenses. See *Griffin*, 247 Ill. App. 3d at 12-13.

In the present case, the complained-of jury instructions did not provide alternatives so divergent that they were in fact separate offenses. Instead, the instructions tracked the language of the stalking statute (720 ILCS 5/12—7.3 (West 1994)) by allowing the jury to convict defendant of stalking if they found he knowingly followed or placed Fire under surveillance on at least two occasions and placed her in reasonable apprehension of immediate or future bodily harm. Accordingly, we find no error here.

■ Fourth, defendant argues the trial court erred by failing to appoint separate counsel and hold an evidentiary hearing regarding the

claim of ineffective assistance of counsel raised in his *pro se* motion for a new trial. We disagree. A trial judge is not required to appoint new counsel and conduct an evidentiary hearing merely because defendant declares he was denied the effective assistance of counsel. *People v. Nitz*, 143 Ill. 2d 82, 134 (1991); *People v. Byron*, 164 Ill. 2d 279, 305 (1995). Instead, the trial court should examine the factual matters underlying defendant's claim. If the claim lacks merit or goes to trial strategy or tactics, no new counsel need be appointed nor must an evidentiary hearing be held. *Nitz*, 143 Ill. 2d at 134; *Byron*, 164 Ill. 2d at 305.

The trial court questioned defendant about his claim of ineffective assistance of counsel and determined that his claims involved trial strategy or were not relevant to the proceedings against him. We agree with the trial court's determination, in particular since the majority of his claims concern Fire's following of defendant on the night of April 2, 1994, and defendant's subsequent attempt to report the matter to police. Whether defendant called police or other authorities to report the incident is irrelevant to whether defendant followed and threatened Fire earlier in the day and later put her under surveillance. Therefore, defense counsel's decision not to introduce this information was legitimate trial strategy. Accordingly, defense counsel's performance was not ineffective, and the trial court did not err by failing to appoint new counsel or hold an evidentiary hearing.

Defendant also contends the trial court should have questioned defense counsel prior to deciding the motion. We disagree. See *People v. Williams*, 147 Ill. 2d 173, 252-53 (1991) (finding no questioning of defense counsel was required where the trial court conducted a proper examination of the factual bases for defendant's claims and found them meritless.)

■ Finally, defendant argues the trial court erred by failing to give Illinois Pattern Jury Instructions, Criminal, No. 24—25.06A (3d ed. 1992) (hereinafter IPI Criminal 3d), which provides that the State must prove "defendant was not justified in using the force which he used." Defendant contends this instruction was necessary because he presented evidence that he was acting in self-defense when he charged Fire, made karate moves, and yelled at her. Defendant contends the jury should have been informed that it could only convict him of stalking if it found he was not justified in using this force.

Defendant waived this issue by failing to object to the stalking instruction as given or to tender IPI Criminal 3d No. 24—25.06A. *People v. Carlson*, 79 Ill. 2d 564, 583-84 (1980). Defendant asks that

we review the issue under the plain error rule (134 Ill. 2d R. 615(a)). In support, defendant cites *People v. Berry*, 99 Ill. 2d 499 (1984), which held that the plain error exception to the waiver rule can be used to correct grave errors or in instances where the case is factually close such that fundamental fairness requires the jury be properly instructed. *Berry*, 99 Ill. 2d at 505. The *Berry* court found such plain error in the trial court's failure to give the precursor to IPI Criminal 3d No. 24—25.06A during a murder and armed violence trial where the defendant had argued self-defense and the evidence was close. *Berry*, 99 Ill. 2d at 505-07. Unlike *Berry*, though, the present case was not factually close, and we find the purported error was neither grave nor such that it denied defendant fundamental fairness. Therefore, we decline to invoke the plain error rule here.

For the foregoing reasons, we affirm the trial court. As part of our judgment, we assess defendant $150 as costs for this appeal.

Affirmed.

CAMPBELL, P.J., and BUCKLEY, J., concur.