## STATE OF CONNECTICUT *v.* BILLIE LEMON
## (SC 15739)

Callahan, C. J., and Berdon, Norcott, Palmer and McDonald, Js.

Argued December 4, 1998—officially released May 18, 1999

*Neal Cone*, assistant public defender, for the appellant (defendant).

*Susann E. Gill*, senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Linda N. Howe*, senior assistant state's attorney, for the appellee (state).

*Opinion*

PALMER, J. Following a jury trial, the defendant, Billie Lemon, was convicted of murder in violation of General Statutes § 53a-54a (a).[1] The trial court rendered judgment in accordance with the verdict, and the defendant appealed to this court.[2] The defendant claims on appeal that the prosecutor, during her closing argument to the jury, improperly commented on the defendant's failure to testify. We disagree with the defendant and affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In June, 1996, Gray Copeland and the defendant's mother, Geraldine Lemon, resided together in a first floor apartment at Cambridge Apartments (apartment) on Main Street in Bridgeport. At approximately 6:30 p.m. on June 29, 1996, two security officers, Joseph Gadson and Arquellio Caraballo, who were employed by the apartment's management, observed the defendant trying to enter the building. Because the apartment manager had instructed Gadson and Caraballo not to allow the defendant on the premises, Gadson and Caraballo asked the defendant to leave. When the defendant failed to comply with the security officers' request, they contacted the police. A Bridgeport police officer arrived at

---

[1] General Statutes § 53a-54a provides in relevant part: "Murder. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

[2] The defendant appealed pursuant to General Statutes § 51-199 (b), which provides in relevant part: "The following matters shall be taken directly to the Supreme Court . . . (3) an appeal in any criminal action involving a conviction for a capital felony, class A felony, or other felony, including any persistent offender status, for which the maximum sentence which may be imposed exceeds twenty years . . . ."

the scene and spoke to the defendant, who explained that her mother and son resided in the building. After ascertaining that the defendant's mother and son were not at home, the officer asked the defendant to leave and to return only when her mother was there. The defendant then left the premises.

Approximately one hour later, the defendant returned and gained entry into her mother's apartment. Copeland, who was alone in the apartment at the time, left the apartment to contact security. Copeland, along with Gadson and Caraballo, returned to the apartment and observed the defendant cooking pork chops in the kitchen. The security officers, who observed that the defendant appeared to be intoxicated, asked her to leave, but she would not do so. They then advised Copeland to call the police. Copeland called 911, but because he also had been drinking, he had difficulty communicating with the 911 dispatcher. As a result, Gadson took the telephone receiver from Copeland and proceeded to explain the situation to the dispatcher.

In the meantime, the defendant asked Copeland why he was having her removed from the apartment. Copeland, who was standing in the doorway to the pantry and looking down, did not respond. The defendant then emerged from the kitchen with a knife and, while screaming an obscenity at Copeland, lunged toward him and stabbed him in the neck.[3] The knife penetrated three inches into Copeland's neck, severing an artery. Copeland, bleeding profusely, ran out of the apartment and collapsed on the front lawn. Gadson, who was still on the telephone with the 911 dispatcher, reported the

---

[3] The medical examiner who performed the autopsy on the victim testified that, in light of the fact that the defendant was shorter than the victim, the defendant probably was holding the knife at eye level when she stabbed the victim in the neck. The medical examiner also indicated that the knife had been thrust into the victim's neck on a slightly upward path.

stabbing and requested an ambulance. Copeland, however, died from the stab wound shortly after the attack.

Meanwhile, the defendant had fled from the apartment, swinging the knife at Gadson and Caraballo as she fled. The police arrived and apprehended the defendant about one and one-half blocks from the apartment. Thereafter, Gadson and Caraballo positively identified the defendant as Copeland's assailant. The knife that the defendant used to stab Copeland was found in a wooded area behind the apartment.

The defendant did not testify at trial, nor did she call any witnesses in her defense. Rather, she relied primarily on the testimony of Gadson and Caraballo to establish that she had been intoxicated at the time of the stabbing.

In the prosecutor's closing argument to the jury, the prosecutor focused on evidence that, in the state's view, established that the defendant had stabbed Copeland with the intent to kill him. During the course of the argument, the prosecutor made the following comments that are the subject of this appeal: "You have seen the defendant. You have a general idea of her size, her height. You have heard a description of . . . Copeland's height and I would ask you to keep in mind that, basically, we are talking about using a knife at the level of someone's body where it's basically the eye level of the defendant. *For her to claim, gee, I didn't know I was hitting him in a vital area of his body is ridiculous.* If all she meant to do was to hurt him, you have all the areas that are more like the arms level, which she could have hit. No. She went for the neck. You've heard the expression 'go for the jugular.' Well, that's what she did. She went for his neck.

"You will probably be hearing some argument from defense [counsel] regarding a defense of intoxication *and that appears to be the only defense that can be*

*raised here is well, gee, I must have been so drunk I didn't know what I was doing* . . . . I'm going to save some of my argument to counter what I feel [defense counsel's] argument would be." (Emphasis added.) The defendant raised no contemporaneous objection to these remarks.

In defense counsel's closing argument, he underscored the evidence of intoxication, arguing to the jury that the defendant "was incapable of forming any intent to kill based upon the circumstances as the evidence shows what was going on in the apartment at that time or . . . simply put . . . that she was too drunk to know what she was doing." Defense counsel continued: "[T]he bottom line is that the [defendant] has claimed through state's witnesses . . . Caraballo and . . . Gadson that she did not have the capacity, the capability or the intention to kill [Copeland]. What ever happened happened, but it was not because she intended to kill him because she was such under the influence of alcohol that she could not formulate that intent. That in a nutshell is the defendant's case. . . . [Y]ou have our position. Because of her alcohol, because her—what she did show, not that she intended to hurt anybody or kill anybody, but that she just didn't know what she was doing."

During the state's rebuttal argument, the prosecutor urged the jury to focus on the defendant's conduct before, during and after the stabbing. The prosecutor maintained that the defendant's conduct strongly supported the state's contention that she had killed Copeland with the intent to do so.

At the conclusion of the parties' closing arguments, the trial court instructed the jury on the crime of murder and on the lesser included offenses of intentional manslaughter in the first degree, reckless manslaughter in the first degree, manslaughter in the second degree

and criminally negligent homicide. In light of the trial testimony that the defendant appeared to be intoxicated on the evening of the stabbing, the court also instructed the jurors that if they found that the defendant had been under the influence of an intoxicant at that time, they then must determine what effect, if any, her intoxication had on her ability to form the specific intent required to commit murder or, alternatively, one of the lesser included offenses. See General Statutes § 53a-7.[4] Finally, the trial court also charged the jury as follows: "The defendant has not testified in this case. An accused person has an option to testify or not to testify at the trial. She is under no obligation to [testify]. She has a constitutional right not to testify. You may not draw any unfavorable inference from the accused's election not to testify."[5]

Four days after the jury had returned its guilty verdict, the defendant filed a motion for a new trial, claiming that the prosecutor's use of the word "I" when referring to the defendant in closing argument constituted an improper comment on the defendant's failure to testify. The trial court denied the defendant's motion and, thereafter, rendered judgment sentencing her to a term of imprisonment of thirty years. This appeal followed.

On appeal, the defendant claims that the prosecutor's closing argument improperly focused the jury's attention on her failure to testify in violation of the fifth

[4] General Statutes § 53a-7 provides: "Effect of intoxication. Intoxication shall not be a defense to a criminal charge, but in any prosecution for an offense evidence of intoxication of the defendant may be offered by the defendant whenever it is relevant to negate an element of the crime charged, provided when recklessness or criminal negligence is an element of the crime charged, if the actor, due to self-induced intoxication, is unaware of or disregards or fails to perceive a risk which he would have been aware of had he not been intoxicated, such unawareness, disregard or failure to perceive shall be immaterial. As used in this section, 'intoxication' means a substantial disturbance of mental or physical capacities resulting from the introduction of substances into the body."

[5] The jurors also received a similar instruction prior to the commencement of jury selection.

amendment to the United States constitution,[6] and article first, § 8, of the Connecticut constitution.[7] The defendant's federal constitutional claim is twofold. First, the defendant contends that she is entitled to prevail under the test that we previously have adopted for determining whether a statement made by a prosecutor during closing argument constitutes an improper comment on a defendant's failure to testify. Alternatively, the defendant maintains that we should reject our current test in favor of a less rigorous standard, and that she is entitled to a new trial under that less stringent test. The defendant also asserts that we should adopt that new test for purposes of the state constitution. With respect to the defendant's federal constitutional claim, we adhere to the test that we previously have embraced for fifth amendment purposes and conclude that, upon application of that test, the defendant is not entitled to a new trial. With respect to the defendant's state constitutional claim, we need not decide whether to adopt the new test that she advocates because we conclude that she cannot prevail under that test.[8] Accord-

---

[6] The fifth amendment to the United States constitution, which is made applicable to the states by virtue of the fourteenth amendment, provides in relevant part: "No person . . . shall be compelled in any criminal case to be a witness against himself . . . ."

[7] The constitution of Connecticut, article first, § 8, provides in relevant part: "No person shall be compelled to give evidence against himself . . . ."

[8] Because the defendant did not raise any of these claims at trial, she seeks to prevail under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), wherein we stated that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id., 239–40. Although we agree with the defendant that she has satisfied the first two prongs of *Golding* and, consequently, is entitled to review of her claims, we conclude that the defendant cannot prevail because she has not satisfied the third prong of *Golding*.

ingly, we affirm the judgment of the trial court.[9]

"It is well settled that comment by the prosecuting attorney . . . on the defendant's failure to testify is prohibited by the fifth amendment to the United States constitution. *Griffin* v. *California*, 380 U.S. 609, 615, 85 S. Ct. 1229, 14 L. Ed. 2d 106, reh. denied, 381 U.S. 957, 85 S. Ct. 1797, 14 L. Ed. 2d 730 (1965)." *State* v. *Arline*, 223 Conn. 52, 66, 612 A.2d 755 (1992). As we repeatedly have stated, "[i]n determining whether a prosecutor's comments have encroached upon a defendant's [fifth amendment] right to remain silent, we ask: Was the language used manifestly intended to be, or was it of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify?"[10] (Internal quotation marks omitted.) *State* v. *Satchwell*, 244 Conn. 547, 571, 710

The state maintains that we should not reach the merits of the defendant's claims of prosecutorial impropriety because her failure to raise them at the time of trial deprived the trial court of the opportunity to take whatever corrective action it might have deemed appropriate at that time. The state further argues that, by addressing the defendant's claims, we may be encouraging defendants in future cases to refrain from raising contemporaneous objections to such allegedly improper prosecutorial comment in reliance on the possibility that, absent a curative or cautionary instruction, the claim on appeal may be stronger than it would have been had the court given such an instruction. We are not unsympathetic to the state's argument. Nevertheless, there has been no suggestion in this case that the defendant's failure to raise her claim in a more timely manner was the product of any tactic or stratagem. Accordingly, we choose to review the defendant's claims notwithstanding her failure to raise a timely objection to the prosecutor's allegedly improper remarks.

[9] The defendant also claims that the prosecutor's argument violated General Statutes § 54-84, which forbids a prosecutor from commenting on a defendant's failure to testify and, in addition, requires the court, in the absence of a contrary request from the defendant, to inform the jurors that they may draw no unfavorable inference from the defendant's failure to testify. Although the defendant makes the conclusory assertion that she is entitled to review of this unpreserved claim under the plain error doctrine, she did not adequately brief the issue and, accordingly, we do not address it.

[10] The defendant does not claim that the prosecutor intended her remarks to be a comment on the defendant's failure to testify. Consequently, she relies solely on the "naturally and necessarily" prong of the test.

A.2d 1348 (1998); accord *State* v. *Marra*, 222 Conn. 506, 533, 610 A.2d 1113 (1992); *State* v. *Evans*, 165 Conn. 61, 72, 327 A.2d 576 (1973).

The defendant acknowledges that we consistently have applied the "naturally and necessarily" test in resolving claims of improper prosecutorial comment on the defendant's failure to testify. She recognizes, as well, that the United States Circuit Courts of Appeals unanimously have adopted the test. See, e.g., *United States* v. *Lampton*, 158 F.3d 251, 260 (5th Cir. 1998), cert. denied, 525 U.S. 1183, 119 S. Ct. 1124, 143 L. Ed. 2d 119 (1999); *United States* v. *Calderon*, 127 F.3d 1314, 1338 (11th Cir. 1997), cert. denied, 523 U.S. 1033, 118 S. Ct. 1328, 140 L. Ed. 2d 490 (1998); *United States* v. *Roberts*, 119 F.3d 1006, 1015 (1st Cir. 1997); *United States* v. *Catlett*, 97 F.3d 565, 573 (D.C. Cir. 1996); *United States* v. *Atcheson*, 94 F.3d 1237, 1246 (9th Cir. 1996), cert. denied, 519 U.S. 1156, 117 S. Ct. 1096, 137 L. Ed. 2d 229 (1997); *United States* v. *Cotnam*, 88 F.3d 487, 497 (7th Cir.), cert. denied, 519 U.S. 942, 117 S. Ct. 326, 136 L. Ed. 2d 240 (1996); *United States* v. *Francis*, 82 F.3d 77, 78 (4th Cir.), cert. denied, 517 U.S. 1250, 116 S. Ct. 2513, 135 L. Ed. 2d 202 (1996); *United States* v. *Jackson*, 64 F.3d 1213, 1218 (8th Cir. 1995), cert. denied, 516 U.S. 1137, 116 S. Ct. 966, 133 L. Ed. 2d 887 (1996); *United States* v. *Bond*, 22 F.3d 662, 669 (6th Cir. 1994); *United States* v. *McIntyre*, 997 F.2d 687, 707 (10th Cir. 1993), cert. denied, 510 U.S. 1063, 114 S. Ct. 736, 126 L. Ed. 2d 699 (1994); *United States* v. *Pitre*, 960 F.2d 1112, 1124 (2d Cir. 1992); *Lesko* v. *Lehman*, 925 F.2d 1527, 1544 (3d Cir.), cert. denied, 502 U.S. 898, 112 S. Ct. 273, 116 L. Ed. 2d 226 (1991). The defendant further concedes that the "naturally and necessarily" test is used by a majority of state courts in resolving claims of improper prosecutorial comment on the defendant's failure to testify. E.g., *State* v. *Bracy*, 145 Ariz. 520, 535, 703 P.2d 464 (1985), cert. denied, 474 U.S. 1110, 106 S.

Ct. 898, 88 L. Ed. 2d 932 (1986); *State* v. *Hamlin*, 146 Vt. 97, 103, 499 A.2d 45 (1985); *Stanton* v. *State*, 692 P.2d 947, 949–50 (Wyo. 1984). Noting, however, that the United States Supreme Court has never expressly approved the test,[11] the defendant urges us to adopt a different, less stringent test for evaluating federal constitutional claims of improper prosecutorial comment on the defendant's failure to testify. Specifically, the defendant contends that the fifth amendment is violated by prosecutorial comment that is "fairly susceptible" of being considered a comment on the defendant's failure to testify.[12]

The defendant's sole argument in support of her claim is that the "naturally and necessarily" test places too great a burden on an accused to establish that the prosecutor's remarks constitute an improper reference to the accused's failure to testify. We are not persuaded by the defendant's claim. The purpose of the rule enunciated in *Griffin* v. *California*, supra, 380 U.S. 615, is to safeguard an accused's fifth amendment right to remain silent, not to curtail the state's "opportunity to meet fairly the evidence and arguments of [the accused]." *United States* v. *Robinson*, 485 U.S. 25, 33, 108 S. Ct.

---

[11] The United States Supreme Court has not expressed *any* view on the "naturally and necessarily" test. Justice Stevens, however, the only member of the court we have found to have alluded to the test, has indicated his approval of it. See *United States* v. *Hasting*, 461 U.S. 499, 515 n.6, 103 S. Ct. 1974, 76 L. Ed. 2d 96 (1983) (Stevens, J., concurring) ("[r]eference to uncontradicted portions of the Government's evidence is improper only when the statement will naturally and necessarily be construed by the jury to be an allusion to the defendant's failure to testify").

[12] A small number of state courts have adopted the "fairly susceptible" test, or something akin to it, for purposes of the federal constitution. See, e.g., *Commonwealth* v. *Smith*, 387 Mass. 900, 908, 444 N.E.2d 374 (1983) (applying "reasonably susceptible" test under federal constitution); see also *Moore* v. *State*, 669 N.E.2d 733, 739 (Ind. 1996) ("[t]he Fifth Amendment privilege against compulsory self-incrimination is violated when a prosecutor makes a statement that is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from a defendant's silence").

864, 99 L. Ed. 2d 23 (1988). "Neither the language, the history, nor the policy of the self-incrimination clause affords support for the . . . proposition that in declaring that no person 'shall be compelled in any criminal case to be a witness against himself,' the authors of the Bill of Rights intended to prohibit proper advocacy concerning the strength of the prosecution's case. This is quite different from specific comment on the defendant's failure to take the stand." *United States ex rel. Leak* v. *Follette*, 418 F.2d 1266, 1268 (2d Cir. 1969), cert. denied, 397 U.S. 1050, 90 S. Ct. 1388, 25 L. Ed. 2d 665 (1970). Thus, "[i]t is one thing to prevent the state from making capital of the defendant's invocation of the constitutional privilege but quite another to say that an accused who avails himself of it is entitled to impose on the prosecution shackles that would be unavailable to a man who testifies in his own defense." Id.; see also *State* v. *Magnotti*, 198 Conn. 209, 220, 502 A.2d 404 (1985) ("[t]he accused, by his failure to testify, cannot insulate himself from general comment on the weakness of his case, even though his failure so to testify may be perceived by the jury as having contributed to the general weakness about which comment is made"). Furthermore, the "naturally and necessarily" test finds support in the realization that "closing arguments of counsel . . . are seldom carefully constructed in toto before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear. While these general observations in no way justify prosecutorial misconduct, they do suggest that a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through a lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." *Donnelly* v. *DeChristoforo*, 416 U.S. 637, 646–47, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974); accord *State* v. *Marra*, supra, 222 Conn. 533–34. For

these reasons, we agree with the overwhelming weight of federal and state authority that the fifth amendment's prohibition against adverse prosecutorial comment on an accused's failure to testify is adequately safeguarded by the "naturally and necessarily" standard.

The defendant also contends that we should adopt the "fairly susceptible" test under article first, § 8, of the Connecticut constitution,[13] a position that she asserts is supported by application of the analysis that we have approved for evaluating claims that our state constitution provides a higher level of protection than the analogous federal constitutional provision.[14] We need not, and therefore do not, decide that question,[15] however, because we conclude that, for the following reasons, the defendant cannot prevail even under the "fairly susceptible" test that she advocates.[16]

---

[13] We note that we have employed the "naturally and necessarily test" for claims brought simultaneously under the federal and state constitutions. See, e.g., *State* v. *Marra*, supra, 222 Conn. 533. In no such case, however, had a defendant claimed that the state constitution required the use of a test different from that applicable under the federal constitution.

[14] "When evaluating the rights afforded to Connecticut citizens under the state constitution, we consider, to the extent applicable, six factors: (1) the text of the relevant constitutional provisions; (2) related Connecticut precedents; (3) persuasive federal precedents; (4) persuasive precedents of other state courts; (5) historical insights into the intent of our constitutional forebears; and (6) contemporary understandings of applicable economic and sociological norms." *State* v. *Trine*, 236 Conn. 216, 230 n.12, 673 A.2d 1098 (1996).

[15] "Established wisdom counsels us to exercise self-restraint so as to eschew unnecessary determinations of constitutional questions." (Internal quotation marks omitted.) *State* v. *Campbell*, 224 Conn. 168, 175, 617 A.2d 889 (1992), cert. denied, 508 U.S. 919, 113 S. Ct. 2365, 124 L. Ed. 2d 271 (1993); see also *State* v. *Waz*, 240 Conn. 365, 372 n.13, 692 A.2d 1217 (1997) (we ordinarily do not consider constitutional issues unless absolutely necessary to decision of case); *State* v. *Torres*, 230 Conn. 372, 382, 645 A.2d 529 (1994) (same).

[16] The defendant has identified at least one state court that has adopted the "fairly susceptible" test for purposes of its state constitution. See *State* v. *Kinchen*, 490 So. 2d 21, 22 (Fla. 1985) ("[t]he fairly susceptible test offers more protection to defendants than does the federal test, and we decline the state's invitation to adopt the latter [for purposes of the state constitution]").

In determining whether the challenged remarks constitute an impermissible comment on the defendant's constitutionally protected right to refrain from testifying, we review the remarks in the particular context in which they were made. See, e.g., *State* v. *Satchwell*, supra, 244 Conn. 571. Viewed in context, it is highly unlikely that the jury considered the prosecutor's rhetorical use of the word "I" in referring to the defendant as a comment on the defendant's failure to testify.[17]

The prosecutor was well aware that defense counsel intended to argue to the jury that the defendant had been so intoxicated at the time of the stabbing that she was unable to form the intent necessary to commit murder. In her own closing argument, the prosecutor therefore underscored the fact that the defendant had "go[ne] for the jugular" of her taller victim rather than some other, more readily accessible and less "vital area of [the victim's] body." Thus, in arguing that it was "ridiculous" for the defendant "to claim, gee, I didn't know I was hitting him in a vital area of his body," the prosecutor merely sought to explain why, in the state's view, the defendant's claim regarding her lack of intent was highly implausible. Similarly, the prosecutor, in characterizing the defendant's contention as "gee, I must have been so drunk I didn't know what I was doing," accurately anticipated the defendant's claim, expressly articulated by defense counsel during closing argument, that the defendant was so intoxicated when she stabbed the victim that she did not "[intend] to hurt

---

[17] The defendant cites to two Texas cases, decided under that state's constitution, in which the court reversed the defendants' convictions because the prosecutors, during their closing arguments, used the word "I" in reference to testimony that the defendants might have given, but did not. *Cook* v. *State*, 702 S.W.2d 597, 599 (Tex. Crim. App. 1984); *Cherry* v. *State*, 507 S.W.2d 549, 550 (Tex. Crim. App. 1974). For the reasons set forth in the text of this opinion, we are not persuaded that, under the specific facts and circumstances of *this* case, the prosecutor's use of the word "I" in referring to the defendant warrants the same conclusion.

anybody or kill anybody. . . . [S]he just didn't know what she was doing." Both of the prosecutor's statements, therefore, related to the only seriously disputed factual issue in the case, namely, the defendant's state of mind when she assaulted the victim. In focusing upon that issue, the prosecutor was addressing the defendant's *claim*, rather than her failure to testify. We see no persuasive reason to conclude that the jury would have attributed the latter meaning, rather than the former, to the prosecutor's comments.

Our conclusion is supported by several additional factors. First, the prosecutor's comments that the defendant now claims were improper apparently were not so obviously prejudicial as to evoke a contemporaneous objection from defense counsel. "[I]t seems strange that, if the state's comments were as egregious at trial as they have been depicted on appeal, no contemporaneous objection was made." *State* v. *Marra*, supra, 222 Conn. 535 n.15; see also *State* v. *Satchwell*, supra, 244 Conn. 572 ("because the defendant made no objection to the statements at trial, we may presume that he did not consider [them] to be seriously prejudicial at the time they were made"). Second, the prosecutor, during her closing argument, also used the personal pronoun "I" in referring to the jurors themselves.[18] This fact makes it less likely that the jury would have placed undue emphasis on the prosecutor's use of this rhetorical device when she used it in arguing the weakness of the defendant's claim. Finally, the trial court properly instructed the jurors that the defendant had a right to refrain from testifying and that they were to draw no unfavorable inference from the defendant's failure to testify.

---

[18] The prosecutor stated as follows: "You don't have the authority—it's not correct if you were to come in and say I feel sorry for [the defendant], therefore I'm going to find her guilty of something less."

We acknowledge that it would have been preferable for the prosecutor to have refrained from using the word "I" when referring to the defendant during the prosecutor's closing argument. The use of such language gives rise to an unnecessary risk that one or more jurors might misinterpret the remarks as a veiled reference to the defendant's failure to testify. We nevertheless are satisfied that the prosecutor's comments in this case, when viewed in context, created no realistic possibility of juror misunderstanding.

The judgment is affirmed.

In this opinion the other justices concurred.

MCDONALD, J., concurring. I agree that the defendant's conviction should be upheld. I only wish to add that I believe we should apply our state constitution using the almost universally accepted "naturally and necessarily" standard. See, e.g., *United States* v. *Lampton*, 158 F.3d 251, 260 (5th Cir. 1998), cert. denied, 525 U.S. 1183, 119 S. Ct. 1124, 143 L. Ed. 2d 119 (1999); *United States* v. *Calderon*, 127 F.3d 1314, 1338 (11th Cir. 1997), cert. denied, 523 U.S. 1033, 118 S. Ct. 1328, 140 L. Ed. 2d 490 (1998); *United States* v. *Roberts*, 119 F.3d 1006, 1015 (1st Cir. 1997); *United States* v. *Catlett*, 97 F.3d 565, 573 (D.C. Cir. 1996); *United States* v. *Atcheson*, 94 F.3d 1237, 1246 (9th Cir. 1996), cert. denied, 519 U.S. 1156, 117 S. Ct. 1096, 137 L. Ed. 2d 229 (1997); *United States* v. *Cotnam*, 88 F.3d 487, 497 (7th Cir.), cert. denied, 519 U.S. 942, 117 S. Ct. 326, 136 L. Ed. 2d 240 (1996); *United States* v. *Francis*, 82 F.3d 77, 78 (4th Cir.), cert. denied, 517 U.S. 1250, 116 S. Ct. 2513, 135 L. Ed. 2d 202 (1996); *United States* v. *Jackson*, 64 F.3d 1213, 1218 (8th Cir. 1995), cert. denied, 516 U.S. 1137, 116 S. Ct. 966, 133 L. Ed. 2d 887 (1996); *United States* v. *Bond*, 22 F.3d 662, 669 (6th Cir. 1994); *United States* v. *McIntyre*, 997 F.2d 687, 707 (10th Cir. 1993), cert. denied, 510 U.S. 1063, 114 S. Ct. 736, 126 L. Ed. 2d 699 (1994); *United States* v. *Pitre*, 960 F.2d 1112, 1124 (2d

Cir. 1992); *Lesko* v. *Lehman*, 925 F.2d 1527, 1544 (3d Cir.), cert. denied, 502 U.S. 898, 112 S. Ct. 273, 116 L. Ed. 2d 226 (1991); *Ex parte McWilliams*, 640 So. 2d 1015, 1020 (Ala. 1993); *McCracken* v. *State*, 431 P.2d 513, 517 (Alaska 1967); *State* v. *Hughes*, 193 Ariz. 72, 87, 969 P.2d 1184 (1998); *Cox* v. *State*, 36 Ark. App. 173, 175, 820 S.W.2d 471 (1991); *Robertson* v. *State*, 596 A.2d 1345, 1357–58 (Del. 1991); *Bowman* v. *United States*, 652 A.2d 64, 72 (D.C. App. 1994); *Ranger* v. *State*, 249 Ga. 315, 319, 290 S.E.2d 63 (1982); *State* v. *Melear*, 63 Haw. 488, 496, 630 P.2d 619 (1981); *People* v. *Stamos*, 214 Ill. App. 3d 895, 902, 574 N.E.2d 184, leave to appeal denied, 141 Ill. 2d 556, 580 N.E.2d 130 (1991); *Schertz* v. *State*, 380 N.W.2d 404, 410 (Iowa 1985); *State* v. *Ninci*, 262 Kan. 21, 48, 936 P.2d 1364 (1997); *Bowling* v. *Commonwealth*, 873 S.W.2d 175, 178 (Ky.), cert. denied, 513 U.S. 862, 115 S. Ct. 176, 130 L. Ed. 2d 112 (1994); *Commonwealth* v. *Smallwood*, 379 Mass. 878, 892, 401 N.E.2d 802 (1980); *People* v. *Guenther*, 188 Mich. App. 174, 179, 469 N.W.2d 59 (1991), leave to appeal denied, 439 Mich. 945, 482 N.W.2d 723 (1992); *State* v. *Lindsey*, 578 S.W.2d 903, 904 (Mo. 1979); *State* v. *Wiman*, 236 Mont. 180, 185, 769 P.2d 1200 (1989); *Barron* v. *State*, 105 Nev. 767, 779, 783 P.2d 444 (1989); *State* v. *Merrill*, 125 N.H. 479, 480, 484 A.2d 1065 (1984); *State* v. *Isiah*, 109 N.M. 21, 24, 781 P.2d 293 (1989); *State* v. *Skeels*, 346 N.C. 147, 153, 484 S.E.2d 390 (1997); *State* v. *Nordquist*, 309 N.W.2d 109, 119 (N.D. 1981); *State* v. *Cooper*, 52 Ohio St. 2d 163, 173, 370 N.E.2d 725 (1977), vacated in part on other grounds, 438 U.S. 911, 98 S. Ct. 3137, 57 L. Ed. 2d 1157 (1978); *Robedeaux* v. *State*, 866 P.2d 417, 433 (Okla. Crim. App. 1993), cert. denied, 513 U.S. 833, 115 S. Ct. 110, 130 L. Ed. 2d 57 (1994); *State* v. *Conway*, 2 Or. App. 49, 51, 465 P.2d 722 (1970); *State* v. *Jefferson*, 116 R.I. 124, 137, 353 A.2d 190 (1976); *Short* v. *State*, 671 S.W.2d 888, 890 (Tex. Crim. App. 1984); *State* v. *Tucker*, 709 P.2d 313, 315 (Utah 1985); *State* v.

668

*Zele,* 168 Vt. 154, 160, 716 A.2d 833 (1998); *Johnson* v. *Commonwealth,* 236 Va. 48, 50, 372 S.E.2d 134 (1988); *State* v. *Fiallo-Lopez,* 78 Wash. App. 717, 728, 899 P.2d 1294 (1995); *State* v. *Lindvig,* 205 Wis. 2d 100, 107, 555 N.W.2d 197 (App. 1996); *Stanton* v. *State,* 692 P.2d 947, 950 (Wyo. 1984).