STATE OF CONNECTICUT *v.* CHARLES JOHNSON
(AC 28537)

Bishop, Beach and Berdon, Js.

Argued February 7—officially released April 22, 2008

*Peter J. Bartinik, Jr.*, for the appellant (defendant).

*Theresa Anne Ferryman*, senior assistant state's attorney, with whom, on the brief, was *Michael L. Regan*, state's attorney, for the appellee (state).

### Opinion

BISHOP, J. The defendant, Charles Johnson, appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and risk of injury to a child in violation of General Statutes § 53-21 (a) (2).[1] On appeal, the defendant claims that (1) the trial

---

[1] We note that the conduct that gave rise to the risk of injury charge allegedly occurred between June, 2000, and September, 2001. Although § 53-21 was amended during that time, there is no dispute that the conduct in which the defendant allegedly had engaged was prohibited under all of the revisions of the statute applicable during that time period. In the interest of simplicity, we refer to the current revision of § 53-21 as the revision of the statute under which the defendant was charged.

court abused its discretion in not giving a jury instruction regarding child witnesses, (2) the court abused its discretion in not permitting the defendant to elicit an allegedly inconsistent statement of the victim's mother, (3) there was insufficient evidence to convict the defendant of either of the charges against him, and (4) the state's improper references to religion during final argument (a) deprived him of a fair trial and (b) violated the establishment clauses of the federal and state constitutions. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At the time of trial, the victim, C,[2] was fifteen years old and was a junior in high school. Prior to the tenth grade, C had attended a portion of seventh grade, eighth grade and ninth grade in public schools in California. Before moving to California in the middle of the seventh grade, C had resided in Norwich. C testified that while living in Norwich, her family, which included her mother, father and brother, was active in the Norwich Assembly of God church. The defendant, who was a pastor, was the leader of the congregation. C testified that she attended church services and family and youth social functions on a regular basis, and described a close relationship between her family and the defendant and his family. Families regularly would gather at the defendant's home for church related social functions.

C testified that during one of these social gatherings at the defendant's home, the defendant grabbed her when she ran into him at the top of the stairs on the second floor, started tickling her, and then groped her and put his hands in her pants and his finger in her vagina. C indicated that during the incident, she was kicking the defendant and telling him to stop, which

[2] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

he did when other children came running up the stairs. C further testified that there had been a previous incident at the defendant's home during which the defendant groped her chest. Although C was unable to indicate the specific dates of these incidents, she testified that they happened before her family moved to California. C did not alert her parents or any other adults about the incidents with the defendant because she did not want anyone to know about them.

C testified that she first disclosed the incident to a man with whom she was on a church mission trip while she was living in California. On that same trip, she also told a counselor leader and his wife. Shortly after she returned home from that trip, C told her mother, R, who, in turn, told C's father, about the incidents with the defendant. The police were not contacted because C did not want to take any action at that time. When C and her family moved back to Connecticut, C attended E.O. Smith High School, where she disclosed the incidents involving the defendant to an English teacher after reading an assigned book involving a girl who had been raped and killed. The disclosure to the English teacher led to the involvement of law enforcement.

Thereafter, the defendant was charged with sexual assault in the first degree and risk of injury to a child. The jury found the defendant guilty of both charges, and the defendant received a total effective sentence of ten years of incarceration followed by five years of special parole. This appeal followed.

I

The defendant first claims that the court abused its discretion in failing to instruct the jury as requested on the credibility of child witnesses. Specifically, the defendant claims that the court should have given the requested instruction because C's testimony was the sole evidence against him and that the "he said-she

said" nature of the evidence necessitated the charge because the credibility of C was the only issue in the case.[3] We are unpersuaded.

The decision of whether to charge on the credibility of a child witness lies in the discretion of the trial court. *State* v. *James*, 211 Conn. 555, 571, 560 A.2d 426 (1989). As later noted by this court, the court in *James* "adopted the prevailing view that allows the trial judge to exercise his or her discretion in determining whether the jury should receive such a special instruction, and, if so, its nature." *State* v. *Abrahante*, 56 Conn. App. 65, 80, 741 A.2d 976 (1999).

"No abuse of discretion was found in such matters where the victim was twelve years old at the time of trial. [*State* v. *James*, supra, 211 Conn.] 571; see *State* v. *Hayes*, 20 Conn. App. 737, 748, 570 A.2d 716, cert. denied, 215 Conn. 802, 574 A.2d 218 (1990). Nor was an abuse of discretion concluded where the witness or victim was between eleven and thirteen years old. *State* v. *Angell*, 237 Conn. 321, 330–31, 677 A.2d 912 (1996) (twelve years old); *State* v. *Osborn*, 41 Conn. App. 287, 290, 676 A.2d 399 (1996) (eleven and thirteen years old)." *State* v. *Abrahante*, supra, 56 Conn. App. 80.

At the time of trial, C was fifteen years old. In denying the defendant's requested charge, the court indicated that "[t]he jury has had the opportunity to have seen and heard [C], [and] her intellectual ability and her real age is something for the jury to assess . . . ." Because the court can most accurately determine those instances where a child witness instruction would be appropriate, we cannot conclude that the court abused its broad discretion in refusing to instruct as requested.[4]

---

[3] The record reflects that C was sworn as a witness at trial, employing the oath prescribed by General Statutes § 1-25.

[4] We further note that the court did give a general charge as to the credibility of witnesses, of which the defendant has not claimed any deficiency.

## II

The defendant next claims that the court improperly prohibited him from questioning R regarding an alleged prior inconsistent statement she made on the basis that it was irrelevant. We find no fault in the court's evidentiary ruling.

During his cross-examination of R, the defendant sought to ask the following question: "Isn't it true that Terry Warner said to you, 'do you think [C] was molested by [the defendant],' and [you] responded, 'Oh, God, no, we've talked about that.' " Although it is difficult to ascertain the precise purpose of the defendant's offer in this regard, it appears that the defendant wanted to ask the proposed question to show that, at some point in time, R did not think that the defendant had molested C.[5] The court sustained the state's objection to the offer because what R thought was irrelevant.

"Evidence is admissible only if it is relevant. . . . The trial court is given broad discretion in determining the relevancy of evidence and its decision will not be disturbed absent a clear abuse of that discretion. . . . Section 4-1 of the Connecticut Code of Evidence provides in pertinent part that evidence is relevant if it has any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence. . . . Moreover, [t]he proffering party bears the burden of establishing the relevance of the offered testimony. Unless a proper foundation is established, the evidence is irrelevant." (Internal quotation marks omitted.) *State* v. *Skidd,* 104 Conn. App. 46, 63, 932

---

[5] From the record, it also appears that the defendant was offering the question to show a prior inconsistent statement of C. The court sustained the state's objection in that regard as well because C had not been confronted with this alleged inconsistency, and, therefore, the offer lacked the proper foundation. The defendant has not challenged the court's ruling in this regard.

A.2d 416 (2007). "It is the obligation of the party offering the evidence to establish its relevance, and [e]very reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *McSwain*, 105 Conn. App. 258, 267, 938 A.2d 595, cert. denied, 286 Conn. 915, 945 A,2d 978 (2008).

Here, the thoughts or beliefs of R as to whether C had been molested by the defendant had no bearing on the question for the jury of whether the defendant did, in fact, sexually assault C. As the court noted: "[I]t's for the jury to determine the credibility of [C]." Because the opinion of R did not tend to make the sexual assault of C more or less probable, the court properly determined that the proffer was irrelevant.

## III

The defendant next claims that the evidence was insufficient to prove beyond a reasonable doubt that he committed the offenses of which he was convicted. Specifically, the defendant contends that because C's testimony was inconsistent with her prior statements, the jury could not have found him guilty beyond a reasonable doubt. We are not persuaded.

In reviewing sufficiency of the evidence claims, we apply a two part test. "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Fauntleroy*, 101 Conn. App. 144, 147–48, 921 A.2d 622 (2007). "The inquiry on appeal is whether the evidence is sufficient to prove the elements of the crimes." *State* v. *Mezrioui*, 26 Conn. App. 395, 398, 602 A.2d 29, cert. denied, 224 Conn. 909, 617

A.2d 169 (1992). "It [is] for the jury . . . to decide whether to believe all or a part of a witness' testimony and to determine the credibility of the witnesses. . . . When a claim of insufficiency of the evidence is made, an appellate court is not concerned with the credibility of the witnesses but need only decide whether there was evidence from which the jury could conclude that the defendant was guilty beyond a reasonable doubt." (Citation omitted.) *State* v. *Sirimanochanh*, 31 Conn. App. 452, 455, 625 A.2d 832 (1993).

Here, the defendant does not claim that the evidence was insufficient in that the state failed to prove one or more of the elements of the charged offenses. Rather, he contends that the only evidence against him was the testimony of C and that "there was no possible way a jury could rely on her testimony beyond a reasonable doubt." Because the jury was free to credit all or part of C's testimony, and it is not our province to second-guess the jury's judgment as to C's credibility, the defendant's claim fails.

IV

The defendant finally claims that the prosecutor improperly referenced religion in her final argument. The defendant's claim in this regard is twofold. First, the defendant claims that the state's reference to religion improperly bolstered C's testimony, that it was unduly passionate and inflammatory, that it improperly invaded the province of the jury and that it constituted unfair comment on the defendant's failure to testify. Second, the defendant claims that the state's references to religion violated the federal constitutional prohibition against the establishment of religion and the Connecticut constitutional prohibition against religious preference.

In her final argument to the jury, the prosecutor stated: "You're going to hear a lot about the issue of

consistency, and that is an important matter for you to consider and I want to start there. I want to start basically with what the state asserts has been presented. We have a sixteen year old girl who has had something happen to her, she says. This thing has caused her some difficulty over the years; it has preyed on her mind in some kind of way. She has raised it in different forums with different people in different settings at different times over the last couple of years. She has taken an oath, an oath that you might find has real significance for her based on what is undisputedly a very religious and devout life. That's something for you to consider when you consider her taking the oath and making these statements under oath."

Later, when discussing C's parents, the prosecutor stated: "The question of a financial gain has been touched upon during the evidence. [C's] father is an attorney; he is well aware of his rights and remedies. Two years have passed, and no lawsuit has been filed based on these claimed incidents. First of all, I'd like you to think about the idea that these two very involved, devout and obviously very earnest parents would put [C] through this for the sake of financial gain. I don't think that's reasonable but, ultimately, again, that's something you need to consider."

## A

As noted, the defendant claims that the state improperly used religion in its final argument to the jury.[6] "Prosecutorial [impropriety] claims invoke a two step analysis. First, the reviewing court must determine whether the challenged conduct did, in fact, constitute

---

[6] Although the defendant's claim of prosecutorial impropriety was not preserved at trial, it may be reviewed utilizing the two-pronged analysis that we have applied in the past. See State v. Stevenson, 269 Conn. 563, 572–73, 849 A.2d 626 (2004) (unpreserved claims of prosecutorial impropriety reviewable without seeking review pursuant to State v. Golding, 213 Conn. 233, 567 A.2d 823 [1989]).

[an impropriety]. Second, if [an impropriety] occurred, the reviewing court must then determine if the defendant has demonstrated substantial prejudice. . . . In order to demonstrate this, the defendant must establish that the trial as a whole was fundamentally unfair and that the [impropriety] so infected the trial with unfairness as to make the conviction a denial of due process. . . .

"Because the claimed prosecutorial [impropriety] occurred during closing arguments, we advance the following legal principles. [P]rosecutorial [impropriety] of a constitutional magnitude can occur in the course of closing arguments. . . . In determining whether such [an impropriety] has occurred, the reviewing court must give due deference to the fact that [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument." (Citation omitted; internal quotation marks omitted.) *State* v. *Skidd*, supra, 104 Conn. App. 64–65. "[A] prosecutor may not appeal to the emotions, passions and prejudices of the jurors. . . . When the prosecutor appeals to emotions, he invites the jury to decide the case, not according to a rational appraisal of the evidence, but on the basis of powerful and irrelevant factors which are likely to skew that appraisal. . . . Therefore, a prosecutor may argue the state's case forcefully, [but] such argument must be fair and based on the facts in evidence and the reasonable inferences to be drawn therefrom." (Internal quotation marks omitted.) *State* v. *Ceballos*, 266 Conn. 364, 394, 832 A.2d 14 (2003).

Our Supreme Court first addressed the use of religious references in prosecutors' arguments in *State* v. *Ceballos*, supra, 266 Conn. 364. In *Ceballos*, "the statements made by the [prosecutor] during his summation

not only directly invoke[d] religious characters, including 'God' and 'Satan,' but also impliedly reference[d] notions of divine punishment for worldly transgressions." Id., 383. After a thorough review of the law in other jurisdictions and academic commentary examining this issue, the court determined that "courts overwhelmingly have taken a disapproving approach to the prosecutorial use of religious imagery and references during trials." Id., 384. Although the court expressed a similar concern for the inappropriate insertion of religion into criminal trials, the court declined to adopt a per se rule of reversibility; rather, the court elected to retain the well settled standard under which we evaluate all claims of prosecutorial impropriety whereby the "threshold inquiry . . . to be performed [is] whether the challenged statements pass the threshold of impropriety in that they are inflammatory, unduly evoke the passions or prejudices of the jurors, or improperly invade the province of the jury." Id., 389. Applying this test, the court concluded that "the context of the statements, the manner in which they were delivered, and the substance of the remarks constituted inappropriate statements under our well established standard regarding prosecutorial misconduct" and that "the [prosecutor's] separate direct invocations of religious characters served solely as an inflammatory emotional appeal to the passions and prejudices of the jury . . . ." Id., 391. The court further concluded that "[b]y raising the inference that the defendant already had been adjudged guilty by an omnipotent other, the statement impermissibly invaded the province of the jury to pass upon the credibility of the respective witnesses." Id., 392.

Similarly, in *State* v. *Camacho*, 282 Conn. 328, 924 A.2d 99, cert. denied, 552 U.S. 956, 128 S. Ct. 388, 169 L. Ed. 2d 273 (2007), the defendant claimed that the prosecutor's use of religious references to the biblical story of Cain and Abel and to the choice between good

and evil were inflammatory. Our Supreme Court agreed, stating that the prosecutor's "remarks had no bearing on any of the facts adduced at trial, nor did they implicate the jury's determination of guilt or innocence. Rather, the context of the statements, the manner in which they were delivered, and their substance constituted an inappropriate appeal to the emotions and an invasion of the province of the jurors." Id., 381–82.

Here, unlike the circumstances in *Ceballos* and *Camacho*, religious practice was within the factual context of the case. Therefore, the prosecutor's mention of C's and her parents' religiousness or devoutness had an evidentiary basis. Additionally, unlike the comments under scrutiny in *Ceballos* and *Camacho*, the comments made by the prosecutor in this case were not emotionally charged or passionate, and the prosecutor's suggestion that C's and her parents' devoutness could be considered in assessing their credibility did not improperly invade the province of the jury. Furthermore, the prosecutor's references to the devoutness of C and her parents were embedded in lengthy recitations of other factors for the jury's consideration. The prosecutor did not invoke religious figures or make any references to a divinity as a means to inflame the jury or to invoke a higher being to influence their deliberations as the prosecutor did in *Ceballos*. In fact, the prosecutor's comment, as to C, could fairly be construed as a comment on her ability to appreciate the moral duty to tell the truth. See *State* v. *Aponte*, 249 Conn. 735, 757, 738 A.2d 117 (1999).

Furthermore, the prosecutor's religious references were no more than appeals to the common sense of the jury. On the basis of the evidence that C and her parents were religious and were very involved in religious activity, the prosecutor's comments can fairly be seen, not as an appeal to a higher being or a preference for religion but simply a common sense observation

that someone who is devout may take seriously the invocation of an oath to God.[7]

The defendant also claims that by noting that C had testified under oath, the prosecutor was indirectly making reference to the defendant's failure to testify. We are not persuaded.

"[T]he Fifth Amendment, in its direct application to the Federal Government, and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt. . . . [T]he limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument." (Citations omitted; internal quotation marks omitted.) *State* v. *Rowe*, 279 Conn. 139, 159–60, 900 A.2d 1276 (2006). As to the proper analysis of this claim, the court in *State* v. *Lemon*, 248 Conn. 652, 731 A.2d 271 (1999), opined: "As we repeatedly have stated, [i]n determining whether a prosecutor's comments have encroached upon a defendant's [fifth amendment] right to remain silent, we ask: Was the language used manifestly intended to be, or was it of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify?" (Internal quotation marks omitted.) Id., 659.

In the case at hand, the record reveals that the prosecutor made no mention whatsoever of the defendant's failure to testify, nor did she draw any comparison regarding the presence or absence of witnesses at trial or between those who may have taken an oath or those

---

[7] An oath is commonly defined and understood as "[a] solemn declaration, accompanied by a swearing to God or a revered person or thing, that one's statement is true or that one will be bound to a promise." Black's Law Dictionary (8th Ed. 2004).

who may have affirmed as permitted by statute. A fair reading of the record leads us to the conclusion that the sole focus of her comments was on C's having taken an oath and her suggestion that the jury may consider how seriously C may have taken the obligation of the oath, given the evidence of her religiousness. Thus, we do not believe the prosecutor's comments can be interpreted fairly as an attempt to draw attention to the fact that the defendant did not testify. These comments neither directly nor indirectly implicated the defendant's failure to testify. On the basis of the foregoing, we conclude that the prosecutor's comments were not improper in light of the context and the manner in which they were made.[8]

We recognize, however, that our Supreme Court in *Ceballos* strongly admonished the state to be wary of interjecting religion into a criminal trial. Thus, even though in this instance we believe the prosecutor's comments were grounded in the evidence, noninflammatory and noninvasive, we will assess whether these comments, in toto, deprived the defendant of a fair trial.

"In determining whether prosecutorial [impropriety] amount[ed] to a denial of due process, this court, in conformity with courts in other jurisdictions, has focused on several factors. Among them are the extent to which the [impropriety] was invited by defense conduct or argument . . . the severity of the [impropriety] . . . the frequency of the [impropriety] . . . the centrality of the [impropriety] to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case."

---

[8] Although we conclude that the prosecutor's remarks in this case were not improper, because religious arguments have been condemned by many federal and state courts as confusing, unnecessary and inflammatory, and are fraught with potential establishment clause complications, counsel is cautioned once again against making unnecessary religious references during trial.

(Citations omitted.) *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987).

"This does not mean . . . that the absence of an objection at trial does not play a significant role in the application of the *Williams* factors. To the contrary, the determination of whether a new trial or proceeding is warranted depends, in part, on whether defense counsel has made a timely objection to any [incident] of the prosecutor's improper [conduct]. When defense counsel does not object, request a curative instruction or move for a mistrial, he presumably does not view the alleged impropriety as prejudicial enough to jeopardize seriously the defendant's right to a fair trial." (Internal quotation marks omitted.) *State* v. *Stevenson*, 269 Conn. 563, 575, 849 A.2d 626 (2004). "[T]he fact that defense counsel did not object to one or more incidents of [impropriety] must be considered in determining whether and to what extent the [impropriety] contributed to depriving the defendant of a fair trial and whether, therefore, reversal is warranted." Id., 576.

"To determine whether the defendant was deprived of his due process right to a fair trial, [the reviewing court] must determine whether the sum total of [the prosecutor's] improprieties rendered the defendant's [trial] fundamentally unfair, in violation of his right to due process. . . . The question of whether the defendant has been prejudiced by prosecutorial [impropriety], therefore, depends on whether there is a reasonable likelihood that the jury's verdict would have been different absent the sum total of the improprieties." (Internal quotation marks omitted.) *State* v. *George J.*, 280 Conn. 551, 604, 910 A.2d 931 (2006), cert. denied, 549 U.S. 1326, 127 S. Ct. 1919, 167 L. Ed. 2d 573 (2007).

First, we conclude that there is nothing in the record to suggest that the claimed improprieties were invited

by the defendant. Additionally, because of the lengthy delay in reporting the offense, there was no physical evidence incriminating the defendant, and credibility was, therefore, a critical issue in this case. As our Supreme Court has stated, cases that are lacking conclusive physical evidence and hinge on the jury's determination of the credibility of the victim are not particularly strong cases. See *State* v. *Singh*, 259 Conn. 693, 724–25, 793 A.2d 226 (2002). C's testimony was not, however, the only testimony against the defendant, as the state also offered corroborative constancy of accusation testimony from two other witnesses. Thus, although the state's case was not overwhelming, it was not wholly dependent on C's testimony.

The claimed improprieties in this case were neither frequent nor severe because they constituted a very small portion of the state's final argument. See *State* v. *Pouncey*, 40 Conn. App. 624, 636, 673 A.2d 547 (1996), aff'd, 241 Conn. 802, 699 A.2d 901 (1997). Although the court did not issue any specific curative instruction as to the religious references made by the prosecutor, the court did instruct the jury to assess witness credibility not only in terms of appearance, demeanor and bias, but also in terms of the witness' ability to recall events and the testimony's harmony with the whole of the evidence presented. These general instructions likely cured any impropriety. Unless there is an indication to the contrary, we presume that the jury followed the court's instructions. See *State* v. *Warholic*, 278 Conn. 354, 401, 897 A.2d 569 (2006). Furthermore, although "a general instruction does not have the same curative effect as a charge directed at a specific impropriety, particularly when the [impropriety] has been more than an isolated occurrence" (internal quotation marks omitted); id.; when "the defendant fail[s] . . . to object to this comment . . . to bring [the improper comment] to the attention of the trial court, [the defendant] bears

much of the responsibility for the fact that [this] claimed impropriet[y] went uncured." (Internal quotation marks omitted.) Id., 402. Because the defendant did not object to the state's remarks when they were made, did not ask for a curative instruction and did not move for a new trial on the basis of the claimed improprieties, it is difficult to accept his claim that those comments deprived him of a fair trial.

As to the defendant's claim that the prosecutor's comments improperly emphasized the fact that he did not testify, our Supreme Court has repeatedly stated that in determining whether a prosecutor's comments have encroached upon a defendant's fifth amendment right to remain silent, we ask: "Was the language used manifestly intended to be, or was it of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify?" (Internal quotation marks omitted.) *State* v. *Rowe*, supra, 279 Conn. 160. Here, not only did the prosecutor never mention the fact that the defendant did not testify, but it is tenuous to suggest that her comment about C having taken an oath was intended to be, or could be construed as, a comment on the defendant's failure to testify. Additionally, the court instructed the jury that no unfavorable inferences could be drawn from the fact that the defendant did not testify.

Thus, even if we were to conclude that the prosecutor's comments during final argument were improper, the defendant was not prejudiced by the impropriety and was not deprived of his right to a fair trial.

B

The defendant finally claims that the prosecutor's references to religion during final argument violated the establishment clause of the federal and state constitutions. Because the defendant raises this claim for the

first time on appeal, it is unpreserved. Although we have previously reviewed unpreserved claims of constitutional magnitude, "[i]t is well established . . . that parties must affirmatively seek to prevail under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine [embodied in Practice Book § 60-5] and bear the burden of establishing that they are entitled to appellate review of their unpreserved constitutional claims." (Internal quotation marks omitted.) *State* v. *Reid*, 277 Conn. 764, 781, 894 A.2d 963 (2006). Here, the defendant has requested neither *Golding* nor plain error review. We therefore decline to review the defendant's claim that the state's references to religion during final argument violated the federal and state establishment clauses.

The judgment is affirmed.

In this opinion BEACH, J., concurred.

BERDON, J., concurring in the result. I agree with parts I, II and III of the majority opinion.

I part company from the majority with respect to part IV. In part IV, the majority gives its approval to the prosecutor's final argument, in which she argued with respect to C, the complaining witness, as follows: "She has taken an oath, an oath that you might find has real significance for her based on what is undisputedly a very religious and devout life. That's something for you to consider when you consider her taking the oath and making these statements under oath."

The plain import of the prosecutor's remark directed the jury's attention to the fact that the complaining witness had given evidence under oath before the jury and, implicitly, that the jury had not heard from the defendant, Charles Johnson.

Our Supreme Court has stated that "[i]t is well settled that comment by the prosecuting attorney . . . on the defendant's failure to testify is prohibited by the fifth amendment to the United States constitution. . . . As we repeatedly have stated, [i]n determining whether a prosecutor's comments have encroached upon a defendant's [fifth amendment] right to remain silent, we ask: Was the language used manifestly intended to be, or was it of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify?" (Citations omitted; internal quotation marks omitted.) *State* v. *Lemon*, 248 Conn. 652, 659, 731 A.2d 271 (1999). The prosecutor's argument violated the defendant's fifth amendment right to remain silent under the United States constitution.

Furthermore, I am also deeply concerned that the foregoing argument with respect to religion appealed to the emotions of the jurors and improperly usurped the province of the jury. Here, the majority concludes that the prosecutor's remarks regarding C and her parents' religiousness and devoutness were justified because such comments "had an evidentiary basis." I fail to comprehend the evidentiary basis supporting such comments in a case in which the defendant has been charged with sexual assault and risk of injury to a child.

Nevertheless, I do not dissent because the defendant did not object to the prosecutor's argument when it was made, nor did he move for a new trial. Rather, I leave this matter to another forum for correction of an injustice.

Accordingly, I reluctantly concur in the result.